## MILKMAN v. ARTHE et al.

### (Circuit Court of Appeals, Second Circuit. April 13, 1915.)

### No. 238.

**1. BANKRUPTCY ☞293—JURISDICTION OF BANKRUPTCY COURT—SUITS BY TRUSTEE.**

Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 565, § 70c, as amended by Act Feb. 5, 1903, c. 487, § 16, 32 Stat. 800 (Comp. St. 1913, § 9654), taken in connection with section 23b, as amended by Act June 25, 1910, c. 412, § 7, 36 Stat. 840 (Comp. St. 1913, § 9607), and section 1 (8), c. 541, 30 Stat. 544 (Comp. St. 1913, § 9585), give to a District Court as a court of bankruptcy jurisdiction of a suit by a trustee against a third person to recover property alleged to belong to the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. ☞293.]

**2. BANKRUPTCY ☞172—SUIT BY TRUSTEE TO RECOVER PROPERTY—PROPERTY BOUGHT BY WIFE—GIFTS FROM HUSBAND.**

Property bought by the wife of a bankrupt with money saved by her from sums given her by her husband from time to time for household expenses when he was not indebted and for which he asked no accounting cannot be recovered by his trustee for the benefit of his subsequent creditors, but it is otherwise as to money similarly given to her after he became indebted to such creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec. Dig. ☞172.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decree of the District Court, Eastern District of New York, adjudging that 45 shares of stock of the Arthe Levy Bernhard Company are the property of the estate in bankruptcy of defendant John C. Arthe, and directing that Lancaster, the record owner of the stock, execute and deliver to the trustee an assignment of said shares. The opinion of the District Judge will be found in 221 Fed. 134.

R. A. Inch, of New York City (Marshall S. Hagar, of New York City, of counsel), for appellants.

Harry E. Lewis, of Brooklyn (D. Steckler, of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The stock was bought in June, 1909, and was put in the name of Lancaster, who is the brother of Lucy Arthe, the wife of the bankrupt, John C. Arthe. The price paid was $4,500. That money was furnished by Mrs. Arthe. Part of it, $2,000, came from a mortgage she placed upon a house, which she had bought September 25, 1905, with moneys which she then had in savings banks; $1,700 in a Utica bank, and apparently $1,200 (or $1,350) in the Empire City Savings Bank. Part of the price of the stock, $1,000, came from the repayment to Mrs. Arthe of a loan she had made to one Spangeman. A further part of $724.26 came from a loan made by a

life insurance company on a policy on the life of John Arthe, his wife being named as the beneficiary. Apparently the balance came from cash which Mrs. Arthe had.

It is the contention of the trustee that all the money paid for the stock in reality belonged to John C. Arthe. Judge Chatfield has stated the facts quite fully, and it will not be necessary to rehearse them all here; his opinion may be referred to.

[1] Objection is taken to the jurisdiction of the District Court. It seems to us that section 70e of the Bankrupt Act, as amended in 1903, taken in connection with section 23b, as amended in 1910, and section 1 (8), give the District Court, as a court of bankruptcy, jurisdiction of this suit. Newcomb v. Biwer, 199 Fed. 529. The appellant does not quote section 70e as amended in 1903, and Harris v. Bank, 216 U. S. 382, 30 Sup. Ct. 296, 54 L. Ed. 528, arose out of transactions occurring before the amendment of section 23b in 1910.

[2] All the money that Mrs. Arthe had she apparently received at one time or another from her husband. Ordinarily it is presumed that the earnings of a husband remain his property although he hands them over to his wife and she deposits them in her own name. This presumption, however, may be rebutted by proof; it may be shown that he made her a gift of money at a time when his circumstances were such that he could properly thus dispose of his property.

John C. Arthe married in August, 1888. He was then a traveling salesman receiving a weekly salary and commissions from his employers. Out of this he retained what he needed for his own expenses; while he was on the road they were presumably small, his employers paying traveling expenses. He also turned over to his wife each week a sum which varied as his own pay increased from $40 to $70. During the ensuing 16 years four children were born. Out of what he gave her the wife maintained the home and brought up the children. She also clothed herself and met her own personal expenses. Being a hard-working, thrifty woman, she laid by something each week out of her own allowance. Her husband never asked her for any accounting as to any surplus above the cost of maintaining the home and supporting the children. After he had turned the weekly amount, whatever it was, over to her, he made no further inquiries about it. Mrs. Arthe deposited what she did not spend in savings banks in her own name. In view of the amount of the income thus disposed of and of the obligation of the husband not only to support his children but also to supply his wife with sufficient to meet her own needs, it would seem a reasonable inference that he intended that whatever of the amount thus handed to her was not spent for these purposes should be a gift to her. The wife testified:

"My husband gave me an amount of his weekly salary with the understanding that it was my own. * * * My husband had nothing to do with my saving it, and he never questioned me. * * * All the money which I did not expend in household expenses, taking care of the family, he certainly gave to me."

The District Judge expressly found, with regard to these sums, that they were voluntary gifts from the husband to the wife. In that conclusion we concur.

A husband, however, may not make such gifts to his wife unless he is at the time in financial condition to do so. During the 16 years from 1888 to 1904, Arthe was not engaged in business on his own account and was receiving a regular salary week by week. There is nothing to indicate that he owed a dollar to any one, or that he was likely to become indebted. Under these circumstances, we see no reason to hold that the various small sums which he voluntarily gave his wife from time to time, when he was entirely solvent, should be taken from her to pay persons who became creditors as a result of a business enterprise in which he subsequently engaged.

In September, 1904, however, the situation changed. Arthe went into partnership with another man and bought out the business of his former employers, giving notes (on some of which he was maker, on others indorser) for $25,000 in payment therefor. Some $6,000 or $7,000 of this amount apparently has been paid, and notes aggregating nearly $8,000 have been proved against Arthe's estate in bankruptcy. The original notes did not mature until some years after their date, September 28, 1904; but they were obligations of his, and their holders were his creditors. From that time therefore we are satisfied that his financial condition was such that he could no longer make voluntary gifts to his wife of money, which he should have kept to meet his own obligations.

Applying what has been held above to the facts of the case so far as they are disclosed in the record, we reach the following conclusions:

1. The real estate which stands in Mrs. Arthe's name was bought almost entirely with the savings she had made prior to September, 1904. But it may be that the price she paid for it includes also gifts of money received from her husband between September, 1904, and September, 1905, when she bought the property. To the extent that those later gifts entered into the purchase of the house the estate should be reimbursed. Such amount of the $4,500 shares of stock as this sum represents should be transferred to the trustee, because it was really money which belonged to John C. Arthe's estate.

2. If Mrs. Arthe had merely raised $2,000 by mortgage of her real estate, and put it into this stock, the stock to that extent would be her property; but there is a further complication. When she bought the real estate, it was mortgaged to the amount of $5,000. In February, 1909, she made a payment on that mortgage of $2,000. From what is disclosed here we are inclined to infer that such payment was made entirely with money given to her by her husband subsequent to September, 1904. If this be so, it follows that when she increased the mortgage again to $5,000, in June, 1909, the $2,000 then received by her from the mortgagee represented the money which she had theretofore used to reduce the mortgage, viz., her savings since 1904. Possibly part of this $2,000 represents rental received from the house. We cannot tell on this record, and if defendants wish an accounting in which they may undertake to show that the entire $2,000 is not money received by the wife from the husband subsequent to September, 1904, the decree may so provide. It is thought, however, that, as the amount must be small, counsel may be able to reach some agreement as to it. If the family

·occupied the whole house, soon after its purchase, as the evidence seems to imply, there would of course, be no rental.

The decision below was rendered prior to our disposition of In re L. Hammil & Co., 221 Fed. 56, —— C. C. A. —— `(February 9, 1915). The policy of insurance, so far as we can discover from the summary printed in the record, is an ordinary wife's policy with no provision as to change of beneficiary. Upon this there was borrowed $1,210, on June 2, 1909. Out of this sum there was paid premium and interest, and the balance $724.26 was used in payment for the stock. The loan was made by the company on the application of the beneficiary, and under our opinion in the Hammil Case the creditors of John C. Arthe were not entitled to the proceeds. To that extent the shares of stock in which such proceeds are invested should not be disturbed.

Decree reversed, with instructions to decree in conformity with this opinion.