## LOWENSTEIN v. REIKES et al.
### No. 389.

Circuit Court of Appeals, Second Circuit.
July 26, 1932.

934

See, also (C. C. A.) 54 F.(2d) 481.

Kommel & Zucker, of New York City, for appellant.

Jacob M. Zinaman, of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

An involuntary petition in bankruptcy was filed against Meyer Reikes in March, 1929. Thereafter William Lowenstein became his trustee in bankruptcy and brought the present suit against the bankrupt's wife, and other defendants who have not appealed. Five causes of action were alleged in the complaint, but only the first and fifth are involved in this appeal.

The first cause of action sought to set aside as a fraudulent conveyance the transfer of certain shares of stock of Union Square Holding Corporation, given by Meyer Reikes to his wife without consideration in October, 1928, when he was insolvent. In defense her answer alleged that the stock was sold to her for a consideration consisting of the cancellation of a debt of $10,000 owed to her by her husband, and the payment to him of $12,500 procured by placing a mortgage upon her Webb avenue real estate. By the fifth cause

of action the trustee in bankruptcy sought to enforce an alleged oral agreement between husband and wife by which she agreed to hold for her husband and reconvey to him upon request real and personal property which he had transferred to her without consideration "on divers occasions" beginning in 1923. In addition to a denial of the agreement, Mrs. Reikes' answer denied jurisdiction of the District Court to entertain the fifth cause of action. After taking voluminous testimony, the court found in favor of the plaintiff on both causes of action, and decreed that the Union Square stock, the Webb avenue real estate, and certain shares of stock of R. & R. Development Company belonged to the bankrupt when the petition was filed and are the property of his trustee in bankruptcy.

The appellant's contention that the court was without jurisdiction of the fifth cause of action is well taken. As already stated, this count of the complaint was based upon the theory that Meyer Reikes had conveyed real and personal property to his wife under an agreement whereby she promised to reconvey to him upon request, and that the trustee in bankruptcy had succeeded to the bankrupt's rights under the contract. Under the law of New York, such a contract, though in parol, appears to be enforceable. Foreman v. Foreman, 251 N. Y. 237, 167 N. E. 428. Since the trustee is suing in the right of the bankrupt, jurisdiction is governed by section 23 of the Bankruptcy Act (11 USCA § 46). Such suits must be brought in the court where the bankrupt might have brought them except when the defendant consents or when recovery may be had under sections 60b, 67e, or 70e, 11 USCA § 96(b), 107(e), 110(e). The bankrupt could not have maintained this suit in a federal court, for he and his wife, the defendant, are citizens of the same state. She did not consent to jurisdiction, and neither allegations nor proof would justify recovery of the Webb avenue residence or the R. & R. Development Company stock under section 70e as transfers in fraud of creditors, for it is neither alleged nor proved that when these transfers were made in 1923 and 1925, respectively, the bankrupt was insolvent, or indebted to any of his present creditors, or that the transfers were made with an intent to defraud future creditors. Consequently the court was without jurisdiction to give relief upon the fifth cause of action. Newcomb v. Biwer, 199 F. 529 (D. C. S. D.); Stiefel v. 14th Street, etc., Corp., 48 F.(2d) 1041 (C. C. A. 2); Harris v. First Nat. Bank, 216 U. S. 382, 30 S. Ct. 296, 54 L. Ed. 528.

The decree must be reversed in so far as it set aside the transfers of the Webb avenue property and the R. & R. Development Company stock.

Jurisdiction of the first cause of action, charging a fraudulent transfer of the Union Square stock, exists by virtue of sections 70e and 23b, 11 USCA § 110(e) and 46(b); Milkman v. Arthe, 223 F. 507 (C. C. A. 2). This the appellant concedes; but she then makes the extraordinary contention that nevertheless the court had no power to determine the existence of the alleged agreement to hold the Webb avenue property for the benefit of her husband. To enforce rights under the agreement is one thing, and beyond the court's power, as we have said; to determine whether the agreement was made is an entirely different thing, and a fact which the court must necessarily have the power to determine in order to decide whether or not consideration was paid for the transfer of the Union Square stock. If the beneficial interest in the Webb avenue land remained in the husband by virtue of the wife's agreement, then the payment to him of the proceeds of the mortgage placed upon it, as alleged in the answer, furnished no consideration for the transfer of the stock. This issue is so clearly within the court's jurisdiction, that we have perhaps labored the point unnecessarily.

The Union Square stock was transferred by Reikes to his wife on October 8 or 9, 1928. On the latter date a new certificate was issued in her name. The District Court found that such transfer was made with the intent on the part of Reikes to hinder, delay, and defraud his creditors. Such finding is amply supported by the evidence. While it is conceded that he remained solvent throughout the year 1927, by the fall of 1928 he was in embarrassed circumstances, if not actually insolvent, and, as the District Court says, "he began to set his affairs in order in seeming preparation for the bankruptcy that later ensued." It is unnecessary to detail the numerous preferential or voluntary transfers which support this conclusion. By the time the petition in bankruptcy was filed against him in March, 1929, he had practically denuded himself of assets. But, even though the Union Square stock was transferred with a fraudulent intent on his part, the appellant would be entitled to hold it, at least to the extent of any valid consideration paid by her, if she did not participate in or have notice of the fraud.

■ The contention that consideration was paid requires a reference to the evidence relating to the Webb avenue property. This was conveyed by Reikes to his wife by a deed duly recorded in May 1923, when he was financially prosperous. It was a two-family residence, part of which was occupied by Mr. and Mrs. Reikes, and the balance rented. After the conveyance, Reikes continued to treat the property in many respects as though it were still his, and the plaintiff argues that only the nominal title was intended to be vested in the wife, the beneficial interest remaining in the husband. It is extremely doubtful whether the evidence would justify such a finding. We shall assume that the conveyance was an outright valid gift. The property was subject to a mortgage of slightly more that $10,000, which in August, 1927, was increased to $20,000; the proceeds, about $8,300, being received by Mr. Reikes. He testified that he then promised his wife to give her security for the sum thus obtained, and that he carried out this promise in October, 1928, when the wife put a second mortgage of $12,500 on the property and gave him the proceeds of this mortgage. According to his testimony, the Union Square stock was transferred to his wife as security for these two advances. Reikes, as the opinion below states, "made a distinctly bad impression" as a witness. Although he was offered by the plaintiff, the trial court was not obliged to believe his testimony that the stock was assigned as security, and evidently did not believe it. There was good reason to refuse it credence. Had his wife been as insistent upon obtaining security as he testified, it is highly improbable that she would have been willing on December 14, 1928, to pledge the stock for his antecedent indebtedness of more than $20,000 to Wilk Bros., or shortly thereafter again to pledge it for his debt of $7,500 to the Fordham National Bank. Moreover, the wife's answer to the plaintiff's complaint made no claim that the stock was assigned as security, but asserted that it was sold to her in consideration of the cancellation of her husband's $10,000 debt to her, and the payment to him of the proceeds of the $12,500 mortgage. This was an admission by answer of facts in direct contradiction of her husband's testimony. The allegation that cancellation of a prior indebtedness was part of the consideration for her purchase was not sustained by any proof, but it does appear that, on the very day the stock was transferred to her, her husband received $12,500 from the second mortgage she placed upon the Webb avenue property which we have assumed to be hers. To that extent, therefore, there is credible evidence that she paid consideration for the transfer.

■ Therefore it is necessary to determine whether Mrs. Reikes participated in or had notice of her husband's purpose to hinder, delay, or defraud his creditors by the transfer of his Union Square stock. If she did, she cannot retain it even to the extent of the consideration paid. Baldwin v. Short, 125 N. Y. 553, 26 N. E. 928; Davis v. Leopold, 87 N. Y. 620, 621a; Levy v. Hamilton, 68 App. Div. 277, 74 N. Y. S. 159. As already noted, the only credible evidence as to the terms upon which it was turned over to her is the admission in her answer that she bought it and the proof that contemporaneously with the transfer she paid her husband $12,500. If it was sold to her for this price, the figure was grossly inadequate. In April, 1928, Reikes had valued the property at $90,000 among his list of assets; in February or March, 1929, an officer of the Fordham National Bank after investigation appraised it at $40,000. Its value on October 8, 1928, was doubtless between these figures. A sale for a grossly inadequate consideration is recognized as one of the common badges of fraud, casting doubt upon the good faith of the purchaser; and this principle is equally applicable to a conveyance from husband to wife. Lawrence Brothers v. Heylman, 111 App. Div. 848, 98 N. Y. S. 121, affirmed 189 N. Y. 573, 82 N. E. 1128; Sandman v. Seaman, 84 Hun, 337, 32 N. Y. S. 338, affirmed 156 N. Y. 668, 50 N. E. 1122; First Nat. Bank v. Miller, 163 N. Y. 164, 167, 57 N. E. 308; Humes v. Scruggs, 94 U. S. 22, 28, 24 L. Ed. 51; Bartles v. Gibson, 17 F. 293, 297 (C. C. Wis.). At least the inadequacy of the consideration was a circumstance sufficient to require the defendant to come forward and testify as to her good faith, and particularly where her husband has testified in contradiction of her claim to be a purchaser, and the stock was pledged for his debts after her alleged purchase. In the case at bar Mrs. Reikes did not testify, and we think the court properly drew an inference against her from her absence. Townley v. Polansky, 185 App. Div. 685, 688, 173 N. Y. S. 677; Dowling v. Hastings, 211 N. Y. 199, 202, 105 N. E. 194; Callan v. Statham, 23 How. 477, 479, 480, 16 L. Ed. 532; Scott v. Mead, 37 F. 865, 873 (D. C., S. D. N. Y.). She had been held in readiness throughout the trial until the final day, when a physician testified in excuse of her absence. The trial court thought the excuse insufficient, and we agree.

For the foregoing reasons the decree is affirmed as to the Union Square Holding Corporation stock; it is reversed as to the Webb avenue real estate and the R. & R. Development Company stock, with directions to dismiss the fifth cause of action for lack of jurisdiction.