## BRISLIN v. KILLANNA HOLDING CORPORATION et al.

### No. 378.

Circuit Court of Appeals, Second Circuit.

Aug. 10, 1936.

Benjamin B. Wesley, of New York City, for complainant.

Abraham N. Geller, of New York City (Bernard A. Saslow, of New York City, of counsel), for respondents.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Upon an involuntary petition filed January 7, 1932, Killanna Realty & Construction Company, Inc., was adjudicated bankrupt. Cornelius A. Brislin was appointed its trustee in bankruptcy and thereafter filed a bill in equity to reach certain property which the bankrupt had transferred

in November, 1931. The property in question consisted of two apartment houses on Hayes avenue and a junior participating interest in a second mortgage covering other premises. The transactions under attack must be set forth in some detail.

Thomas F. Guidera was the president and sole stockholder of the bankrupt. Early in November, 1931, he caused to be organized Killanna Holding Corporation and caused the bankrupt to convey to it, in exchange for all its capital stock, the Hayes avenue apartments, and the above-mentioned mortgage participation. The stock of the holding corporation was then transferred to Morris E. Ginsberg pursuant to a tripartite agreement, dated November 14, 1931, between the bankrupt, Ginsberg, and Guidera. In form the transaction was a sale of the stock to Ginsberg for an expressed consideration of $58,000, of which $34,900 was to be paid in cash, and $23,100 by procuring the satisfaction of two debts owed by the bankrupt, $14,500 being owed to D. Ginsberg & Sons, Inc., and $8,600 to J. Klein Iron Works, Inc. On November 16th the debts were released and Ginsberg paid the bankrupt $34,900. By the tripartite agreement the bankrupt was given a six months' option effective after two years to repurchase the stock for $70,000. This sum was arrived at by adding to the purchase price of $58,000 interest thereon at 6 per cent. per annum for 2½ years, plus $3,300 as a profit for Ginsberg's investment. The agreement also gave Ginsberg the privilege of borrowing money from the holding corporation repayable if the option to repurchase should be exercised, and provided that Guidera should be employed by the holding corporation to manage the Hayes avenue apartments on a commission of one per cent. of the rents collected.

The complainant's theory of the transaction was that the respondents had conspired to put beyond reach of the bankrupt's creditors property of value far greater than the consideration paid by Ginsberg, and he sought to set it aside as a transfer in fraud of creditors, or as a voidable preference in so far as the two creditors of the bankrupt were benefited. The District Judge after hearing testimony found that there was no fraud involved, and that the transaction was intended by the parties as a mortgage to secure the $34,900 advanced rather than as a sale of the stock. The court directed that the pleadings be amended to conform

to the proof, and entered an interlocutory decree to the effect that the stock and property of the holding corporation were assets of the bankrupt estate subject to a lien in favor of Ginsberg which was to be foreclosed if not paid on or before July 17, 1934; and Harry M. Lewis was appointed "sole agent" to take possession of the property in the meantime. Ginsberg was directed to account for sums received from the holding corporation during his control of it. No finding was made as to the value of the property transferred by the bankrupt, nor as to the latter's insolvency at the date of such transfers. As a result of Ginsberg's accounting, he was surcharged $7,026.18 and interest, and this was ordered deducted from the sum secured by his lien.

On June 27, 1934, the complainant, on the ground of newly discovered evidence, applied for a rehearing on the issue of fraud and conspiracy. A reference was ordered to a special master to take testimony and report his opinion whether the interlocutory decree should be vacated as to the lien awarded Ginsberg on the ground that the evidence in the case and the newly discovered evidence prove that the challenged transfers were made in fraud of creditors. In the meantime foreclosure of the lien was stayed. An enormous mass of testimony and exhibits was introduced before the master. In general, it was directed to proving that Ginsberg had not put up any money of his own but had financed the $34,900 on the credit of the holding corporation and paid the bank loan with its money. The master, however, believed the explanations of the respondents and in a report of 100 printed pages analyzed the evidence and found that fraud had not been proved. His report was approved, and on June 11, 1935, a final decree was entered. It decreed that Ginsberg has a valid lien on the stock and assets of the holding corporation in the sum of $27,873.82 with interest thereon from November 14, 1931, at 6 per cent. per annum until paid, and it directed that the lien be foreclosed by public sale. Both the complainant and the respondents (other than Guidera) have appealed.

■■ The complainant's appeal raises almost exclusively questions of fact as to which he asks this court to make findings directly contrary to those made by the master and District Judge. It is perfectly obvious that we cannot do this. The issues turn on conflicting testimony where credibility must be the determining factor. Under

such circumstances it is axiomatic that an appellate court will not reverse the findings of judge or master who heard and saw the witnesses unless the error is clear beyond dispute. It is urged that the respondent's witnesses were contradicted by documentary proof, but the documents relied on were subject to explanation and the explanations offered were believed by the master. For example, the temporary loan, which Ginsberg made from the Ginsberg corporation on November 16th, was refinanced by discounting at the bank on December 1st, a note made by the holding corporation and indorsed by Ginsberg, the Ginsberg corporation, and Klein. On the face of the paper the maker was the primary obligor, but it was proved conclusively by the bank officials, unless their testimony be thrown out as perjury (which the master expressly refused to do), that the loan was made to Ginsberg on the credit of himself and the Ginsberg corporation. The record is inordinately long—more than 3,300 printed pages—and it would serve no useful purpose to take up each item of the evidence which the complainant says points to a conspiracy to defraud creditors. It will suffice to say that we are satisfied that the court below correctly decided that fraud was not proved.

■ The contention that the transaction was a voidable preference must also fail, for there was no adequate proof that the bankrupt was insolvent on November 16, 1931. It was then the owner of some 21 properties. No attempt was made by the complainant to show the value thereof. The fact that they were subject to mortgages, upon some of which foreclosure had been started, and that the bankrupt had no liquid assets falls far short of proof of insolvency.

■ When Guidera first approached the Ginsbergs with a view to raising money, he proposed a loan secured by a second mortgage on the Hayes avenue apartments. When this was rejected, he devised the plan set out in the tripartite agreement of November 14th. Because of the option to repurchase reserved thereby and the testimony that a loan was really intended, the District Judge held that the transaction should be recognized as a mortgage and that Ginsberg should have a lien upon the capital stock and assets of the holding corporation for the amount of his cash advance. Compare Lowenstein v. Reikes, 60 F.(2d) 933, 935 (C.C.A.2). So far as he had benefited from possession of the property, he was required to account and he has repaid to the holding company what he borrowed under the permission granted by the tripartite agreement and assumed by the parties to be valid. We think this was a correct disposition of the matter. No provision of the Bankruptcy Act (11 U.S. C.A. § 1 et seq.) or of state law has been called to our attention which forbids giving effect to the transaction as a valid pledge of the capital stock as security for a present advance. Since the stock represents all the assets of the holding corporation, no reason is apparent why the court may not order a sale of the assets as an appropriate method of foreclosing the pledge.

The complainant objects that the interlocutory decree, while adjudging that the equity in the Hayes avenue apartments belonged to the trustee, directed that possession be delivered to Harry M. Lewis as sole agent to operate the property pending foreclosure. In effect the court appointed Lewis as a receiver in foreclosure. No valid objection to so doing has been advanced.

■ Further complaint is made because the interlocutory decree directs the trustee to increase his bond to $10,000 conditioned to indemnify the holding corporation and Ginsberg for any loss they may suffer by any act of the trustee. This portion of the decree has no doubt been complied with so that the question whether it was correct would appear to be moot.

■ Upon his accounting Ginsberg was surcharged $7,026.18 and this sum was directed to be deducted from the $34,900 secured by his lien. The trustee urges that the surcharge is too small and Ginsberg that it is too large. The disputed items will be briefly considered seriatim: (a) Commissions earned by Guidera as managing agent of the premises subsequent to the filing of the petition in bankruptcy. The master found that the commissions paid to Guidera were no more than the reasonable value of his services. This being true, no error appears in allowing the item as an expense of operation during the trustee's ownership of the premises. (b) Amortization payments under the first mortgage. These payments were necessary to prevent foreclosure of the mortgage and save the property for the benefit of the bankrupt estate. To surcharge Ginsberg with interest on these payments would be most inequitable (c) Fees paid to attorneys, ac-

countants, and bookkeeper of Killanna Holding Corporation. These items were carefully scrutinized by the master and we are satisfied with his reasons for allowing them. This concludes the items challenged by the trustee's appeal; the remainder are attacked by Ginsberg as improperly included in the surcharge. (d) Interest amounting to $1,018.52 on Ginsberg's borrowings. As he had the use of the money, there is ample reason to charge him interest thereon. (e) An item of $597.56 represents interest accumulated on taxes and mortgage interest because payment thereof was deferred due to depletion of the holding corporation's funds by reason of Ginsberg's borrowings. Since he is charged interest on such borrowings by item (d), we agree with his contention that the inclusion of item (e) results in a duplication of interest charges. It should be eliminated. (f) $2,207.15 represents rents collected and retained by Guidera while employed by Ginsberg to manage the property. Ginsberg was protected by a surety company bond, but waived his rights thereunder and accepted an indemnity agreement signed by Guidera's sister, upon which, so far as appears, he has made no effort to recover. Since his agent collected rents, we see no reason why Ginsberg should escape accounting for them. (g) An item of $1,025 was paid by the holding corporation for legal services in defending the present suit. The master concluded that its defense was solely in the interest of Ginsberg's contention that he was the outright owner of the stock. The corporation had no interest in that issue and the item was properly included. We conclude that the total surcharge should be reduced by $597.-56; that is, to the sum of $6,428.62.

The complainant further contends that the surcharge should not be satisfied by setting it off against the bankrupt's debt to Ginsberg, but should be paid in cash to the trustee, because section 68 of the Bankruptcy Act (11 U.S.C.A. § 108) permits set-off only in the case of mutual debts. See Western Tie & Timber Co. v. Brown, 196 U.S. 502, 510, 25 S.Ct. 339, 49 L.Ed. 571, Ginsberg's debt arises from his possession of the property of the Killanna Holding Corporation which the court has adjudged to be property of the bankrupt. If his possession of property of the bankrupt was wrongful, his duty to account to the trustee could not be set off against the bankrupt's debt to him. But if his possession were obtained with the bankrupt's consent in order to afford additional security for the loan he made, the debts would be mutual and subject to set off. Ginsberg obtained control and possession of the property by virtue of the tripartite agreement which the district court set aside. It recognized the agreement, however, as equivalent to a mortgage or pledge of the stock and, since no fraud was proved, we think it should also be recognized as evidencing the pledgor's consent that the pledgee have possession and control of the Hayes avenue property as additional security for the sum advanced. This was really what the parties intended for Ginsberg had declined to make a loan on an ordinary real estate mortgage, but was willing to make the advance if he could have possession by control of the entire capital stock until repayment of the loan. Accordingly, there was no error in allowing the set off.

The defendants, on their appeal, argue somewhat half-heartedly that the transaction should have been held to be a valid sale of the stock rather than a pledge, and that consequently the bill should have been dismissed. The discussion already accorded this feature of the case shows that their position is without merit. The question whether the pledge should not have been allowed to stand as security for repayment of the canceled debts as well as the present advance, has not been argued and need not be considered.

Their chief complaint relates to the matter of costs on the rehearing. The fees allowed to the master and to the stenographer aggregated $2,729.32. Primary liability was placed on the complainant and secondary liability on Ginsberg. This was right. Ginsberg urges that they should have been imposed on the complainant's attorney personally pursuant to 28 U.S.C.A. § 829. It is a matter peculiarly for the discretion of the trial judge to determine to what extent an attorney before him has vexatiously and unreasonably increased costs by multiplying the proceedings. The trial judge did not see fit to award costs against the attorney, and we are not disposed to say that he abused his discretion despite the inordinate length of the record.

The decree is modified by increasing the amount of Ginsberg's lien to $28,471.38, with interest thereon from November 14, 1931, at 6 per cent. per annum, and as so modified is affirmed. Costs in this court are awarded the defendants-appellees and appellants.