132

## LUNDIN v. CHUBINSKY et al.

District Court, S. D. New York.
Jan. 29, 1938.

Aaron Edward Nowack, of New York City, for complainant.

Benjamin Bayers, of New York City (Samuel Masia, of New York City, of counsel), for bankrupt.

HULBERT, District Judge.

Plaintiff seeks to recover the possession of a certain mortgage claimed to have been purchased by the bankrupt, contending that while the nominal title was conveyed to Mrs. Chubinsky, the beneficial interest remained in her husband.

On March 1, 1929, the 1931–1933 Clinton Avenue Realty Corporation executed a mortgage covering the premises 220 East Ninety-Ninth street, borough of Manhattan, New York City, in which Beckie Chubinsky was named as mortgagee, to secure the payment of an indebtedness of $15,000 on March 1, 1933, with interest thereon at the rate of 6 per centum per annum, payable semiannually. On March 13, 1929, the mortgage was recorded in the office of the register of New York county and, in order that it should become a first lien on said premises, there was also recorded, on the same date, an agreement between Jane Schlossberg and Beckie Chubinsky subordinating a certain existing mortgage.

Thereafter an action was commenced in the Supreme Court of the state of New York, county of New York, by Beckie Chubinsky, to foreclose the said mortgage, and such proceedings were had that pursuant to the final decree of foreclosure and sale entered in said action, a referee's deed dated November 3, 1931, was executed and recorded in the register's office of New York county conveying the premises 220 East Ninety-Ninth street to Shugreen Realty Corporation, and a purchase-money mortgage bearing the same date was made by the vendee wherein Beckie Chubinsky was designated as mortgagee to secure the payment of an indebtedness in the sum of $12,000 on November 9, 1934, with interest at 6 per centum, payable quarterly, and that mortgage was recorded in the office of the register of the county of New York.

By an instrument dated December 8, 1934, executed by Beckie Chubinsky and Harry Chubinsky, for a stated consideration of $2,500, the said mortgage was assigned to the defendant Harry Levine, and said assignment was recorded in the office of the register of the county of New York.

While the validity of said assignment is challenged in the complaint, upon the appearance of said Harry Levine, plaintiff's attorney entered into a stipulation with him waiving the filing of an answer, consenting that the allegations as to Levine be deemed denied, and further providing that Levine had a first lien upon the mortgage which is the subject of this

action, in the sum of $2,500 and accrued interest, together with any balance that may remain unpaid upon a loan made by Levine to Isidor Chubinsky, a brother of the bankrupt, and that subject to such lien the defendant Levine agreed to hold the said mortgage awaiting the outcome of this action.

On January 31, 1936, Harry Chubinsky filed a pauper's voluntary petition in bankruptcy and scheduled liabilities of $743.20 and no assets, except $6,100 claimed to be exempt, and was thereupon adjudicated a bankrupt.

At the first meeting of creditors of the bankrupt, the plaintiff was elected trustee, and duly qualified and has ever since acted in that capacity.

The bankrupt, examined pursuant to section 21a of the Bankruptcy Act, 11 U.S.C.A. § 44(a), testified that he had speculated in Wall Street in 1929 and went broke. In 1930 he incorporated his fruit and produce business under the name of H. Chubinsky & Co. The stockholders were and are: The defendant Harry Chubinsky, the defendant Beckie Chubinsky, and her brother, one Phillip Square. Harry Chubinsky has been treasurer of the corporation since its inception.

It was further developed upon said examination, that on March 30, 1926, Harry Chubinsky opened a compound interest account with the Chase National Bank of the City of New York, Harlem branch, and made an initial deposit in the sum of $10,000, in his name, in trust, for the defendant Beckie Chubinsky, his wife.

On December 13, 1928, there was a deposit in said account of $366.25 and, with accrued interest, the total credit amounted to $11,199.43 when, on October 2, 1928, the defendant Harry Chubinsky withdrew $1,149.37 and deposited the same in his personal checking account (No. 295) in the Public National Bank & Trust Company.

On December 1, 1928, the balance of $10,050.06 was withdrawn from the Chase National Bank and transferred to a thrift account, No. 27038, in the Public National Bank & Trust Company in the name of Harry Chubinsky, in trust for Beckie Chubinsky, his wife.

On March 1, 1929, there was withdrawn from said thrift account and deposited to the credit of the checking account (No. 295) of Harry Chubinsky $10,-000, and on March 11, 1929, a check was drawn by Harry Chubinsky upon his personal account (No. 295) for $13,599.78. This check was delivered to the 1931–1933 Clinton Avenue Realty Corporation in payment of the said mortgage.

The proof is that Beckie Chubinsky opened a personal checking account in the Public National Bank & Trust Company on May 21, 1930, and it is still existent.

The loan made by the defendant Levine is evidenced by two checks dated December 8, 1934, both to the order of Beckie Chubinsky. One in the sum of $683.96 was indorsed in her name to the order of the estate of Max Klughoffer (the purpose thereof not disclosed); the other, in the sum of $1,816.04, was indorsed in her name to the order, and deposited in the bank account, of H. Chubinsky & Co. Harry Chubinsky testified the deposit of $1,816.04 was a loan, and Mrs. Chubinsky received from the corporation toward the repayment thereof $40 per week for about 10 months. In his examination under section 21a he had testified that $40 per week was paid to his wife and $20 per week to their son for services. There were offered in evidence by the plaintiff, seventeen checks, all drawn by the owner of the premises 220 East Ninety-Ninth street to the order of Beckie Chubinsky, between June 23d, 1936, and September 15, 1937, in payment of the quarterly interest on the mortgage in question during that period. All of these checks found their way into the bank account of H. Chubinsky & Co. or H. Chubinsky & Son, notwithstanding the existence of her own personal bank account. There was considerable disparity in the testimony with respect to the indorsement on said checks. Harry Chubinsky identified the name of Mrs. Chubinsky in her handwriting upon direct examination, but later admitted some times the name was written by him, when, as he claimed, he gave her the money out of the funds of Chubinsky & Co., and upon other occasions the name was written by his brother when he gave her the money out of the funds of Chubinsky & Son.

In an affidavit filed in the bankruptcy proceeding, verified by Harry Chubinsky on April 27, 1937, he stated: "In 1929, I presented my wife with a gift of $10,-000. Thereafter she purchased a mortgage with her moneys and this sum of

money I gave her. At that time I did not owe any person a single cent. The debts which are included in the schedules in bankruptcy were all incurred after 1933, which was at least three or four years after the purchase of the said mortgage."

The plaintiff relies upon the foregoing facts to establish that the mortgage in question was at the time of adjudication the property of the bankrupt; that his wife never had any dominion or control; and that plaintiff acquired title thereto by operation of law upon his appointment and qualification.

All of the parties to this action are residents of this district.

When the National Bankruptcy Act was enacted, July 1, 1898, section 23, 30 Stat. 552, now section 46, title 11, U.S.C.A., read as follows:

"(a) The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"(b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

Section 23b, 11 U.S.C.A. § 46 note, applied to both circuit courts (as then existing) and district courts, as well as · state courts.

By section 289 of the Judicial Code, 28 U.S.C.A. § 431 note, the circuit courts were abolished and by section 291 of that Code, 28 U.S.C.A. § 431 note, corresponding powers and duties were vested in the district courts (see 28 U.S.C.A. § 431) which also had the effect of amending section 23a, Bankr.Act, so as to make it apply to district courts, and that application was formally recognized by Act of May 27, 1926, § 8, 44 Stat. 664, 11 U.S.C.A. § 46(a).

In Bardes v. Hawarden Bank, 178 U.S. 524, 539, 20 S.Ct. 1000, 1006, 44 L.Ed. 1175, it was held: "The district court of the United States can, by the proposed defendants' consent, but not otherwise, entertain jurisdiction over suits brought by trustees in bankruptcy to set aside fraudulent transfers of money or property, made by the bankrupt to third parties before the institution of the proceedings in bankruptcy."

In the light of the opinion in that case, the Congress amended subdivision (b) of section 23, 32 Stat. 798, § 8, 11 U.S.C.A. § 46(b) by adding the words "except suits for the recovery of property under section 60, subdivision b, and section sixty-seven, subdivision e."

In 1910 the statute was further amended 11 U.S.C.A. § 46(b), by the addition to said exception of the words "section 70, subdivision e" (which relates to fraudulent conveyances in violation of state statutes irrespective of the time when made).

The Chief Justice of the United States, in the case of Schumacher v. Beeler, 293 U.S. 367, at page 377, 55 S.Ct. 230, 235, 79 L.Ed. 433, wrote: "We think that the exceptions thus established by the amending acts show clearly that it was the intent of the Congress that section 23b should operate as a grant of jurisdiction to the federal court of suits brought by a trustee in bankruptcy against adverse claimants, *provided the defendant consented to be* sued in that court, although the bankrupt could not have brought suit there if proceedings in bankruptcy had not been instituted, and that, in suits falling within the exceptions, the federal court should have ·jurisdiction without the defendant's consent." (Italics supplied)

Upon the trial of this action, it was conceded by counsel for the plaintiff at the close of his case that plaintiff did not seek recovery under sections 60b, 67e, or 70e, Bankr.Act, 11 U.S.C.A. §§ 96(b), 107 (e), 110(e), but the plaintiff's contention was that jurisdiction had been conferred upon the court to render judgment under its general equity powers because the defendant by failure to challenge jurisdiction had consented thereto pursuant to subdivision (b) of section 23. The defendants Chubinsky then and there challenged jurisdiction claiming that they had been brought into court to answer a pleading, the allegations of which, and their denial thereof, raised an issue under the exceptions in section 23b, and the defendants rested their case without offering any proof.

So far as the research which the court has been able to make indicates, there has never been any judicial construction of the words "proposed defendant" as used in the statute here involved. Whatever the purpose and intention of the Congress may have been forty years ago, the court feels that the disposition of this case is controlled by the allegations contained in the sixth paragraph of the complaint, which read as follows: "This is a suit in equity brought by the complainant herein as Trustee in Bankruptcy of Harry Chubinsky, pursuant to order herein of Hon. Peter B. Olney, Jr., Referee in Bankruptcy in charge of these proceedings, and under and by virtue of the Acts of Congress relating to Bankruptcy to set aside certain fraudulent transfers of certain property; to establish complainant's ownership and title thereto; and to procure a decree foreclosing all of the defendants above named from any lien, title or interest in and to said property, and to direct the defendants, and each of them, to deliver a certain bond and mortgage to the complainant, and for a further decree adjudging that said bond and mortgage be the property of the said bankrupt, and hence an asset of his bankrupt estate."

It is a reasonable deduction that plaintiff intended to institute and maintain an action which, under the exceptions contained in section 23b of the National Bankruptcy Act, could be instituted without the defendants' consent, and that the defendants were never called upon to raise the question of jurisdiction by answer, or motion before answer.

Both parties rely upon In re Lowenstein v. Reikes, 2 Cir., 60 F.2d 933. In that case the complaint alleged several causes of action. It was sought by the fifth cause of action to enforce an oral agreement (apparently enforceable according to New York law) between husband and wife, by which she agreed to hold for her husband and reconvey to him upon request, real and personal property which he had transferred to her without consideration "on divers occasions." *Other causes of action were based* upon the exceptions contained in the statute but it was apparent that this one (the fifth) was not. In addition to a denial of the agreement, Mrs. Reikes answered denying jurisdiction of the District Court to entertain the fifth cause of action and her contention was sustained. Swan, C. J., said at page 935: "Such suits must be brought in the court where the bankrupt might have brought them except when the defendant consents or when recovery may be had under sections 60b, 67e, or 70e, 11 U.S.C.A. §§ 96 (b), 107 (e), 110 (e). The bankrupt could not have maintained this suit in a federal court, for he and his wife, the defendant, are citizens of the same state. She did not consent to jurisdiction, and neither allegations nor proof would justify recovery * * * under section 70e as transfers in fraud of creditors, for it is neither alleged nor proved that when these transfers were made * * * the bankrupt was insolvent, or indebted to any of his present creditors, or that the transfers were made with an intent to defraud future creditors."

That case is not directly in point, but is applicable by analogy.

In the instant case there was but one cause of action "to set aside certain fraudulent transfers of certain property (and) to establish the trustee's ownership and title" and secure possession of the mortgage.

The plaintiff has not made out a cause of action under the allegations of the complaint, no motion was made to conform the allegations to the proof, and, if there had been the court was without jurisdiction.

There must be judgment for the defendants.