**J. D. MONK et al.**

v.

**ROADWAY EXPRESS, INC., and Local Union No. 194 of the International Brotherhood of Teamsters.**

Civ. A. No. 750548.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Jan. 6, 1977.

Robert E. Piper, Jr., Frank E. Brown, Jr., Bobby Stromile, Piper & Brown, Shreveport, La., for plaintiffs.

John L. Schober, Jr., Joe B. Cordill, Jr., Shreveport, La., M. Curtiss McKee, Fuselier, Ott, McKee & Flowers, Jackson, Miss., for defendants Roadway Express.

Edward B. Cloutman, III, Mullinax, Wells, Mauzy & Baab, Dallas, Tex., for Union No. 194 of Intern. Broth. of Teamsters.

Herschel E. Richard, Jr., Charles G. Tutt, Cook, Clark, Egan, Yancey & King, Shreveport, La., for plaintiffs' counsel In Matter of Attorney's Fees.

DAWKINS, Senior District Judge.

## RULING ON MOTION TO ASSESS COSTS, ATTORNEY FEES, AND EXPENSES

With much regret, we must note that this action presents a classic example of attorneys either failing to "look in the book," or, having done so, failing to abide by the plain meaning of the Federal Rules of Civil Procedure; and the most regrettable aspect of this was that it was done deliberately and "vexatiously."

Initiated as a would-be class action under Title VII of the Equal Employment Opportunity Act and the Civil Rights Act of 1866,[1] it now has descended, not only to a forced dismissal of all of plaintiffs' claims because of total and deliberate failure of their counsel properly to prosecute them, but to a determination by us as to whether, and how much, plaintiffs' counsel should pay to defendants for costs, expenses, and attorney fees.

After filing the action in this Court on September 3, 1975, apparently with no prior investigation as to the facts, plaintiffs' counsel did nothing of substance adequately to pursue the interests of their individual clients or of the purported class members. Finally, on June 30, 1976, we granted a motion to dismiss plaintiffs' claims for failure to answer interrogatories (and for other reasons shown *infra*).

The following series of events, condensed and paraphrased from the docket sheet, explains, at least in part, the bases for the motion to assess costs, attorney fees, and expenses now before us:

11-14-75 Motion and order signed for extension of time within which defendants could answer plaintiffs' interrogatories.

1-5-76 Defendants' first interrogatories to plaintiffs filed.

4-7-76 Instruction to counsel to file briefs on the question of whether or not Judge Real's decision of 6-9-75 in *Salinas v. Roadway Express, Incorporated, et al.,* S.A. 71—C.A. 254, a case pending in the Western District of Texas, encompassed plaintiffs and the would-be class; plaintiffs' brief to be filed in 10 days, and defendants to respond within 10 days thereafter.

4-13-76 Notice of the depositions of Green, McPherson, and Monk to be taken 5-6-76 and 5-7-76.

4-13-76 Motion by defendants to compel answers to interrogatories filed 1-5-76. Magistrate Barton then allowed plaintiffs until 10:00 A.M. on 4-21-76 to answer the interrogatories, or show cause why plaintiffs' counsel should not be ordered to do so.

4-21-76 Plaintiffs' attorneys, Piper, Brown, and Stromile failed to appear at 10:00 A.M. due to inadvertence; the hearing was upset and rescheduled for 3:00 P.M. the same day. At 3:00 P.M. all attorneys were present. Plaintiffs were ordered to respond to defendants' interrogatories by 5-24-76. No attorney fees were assessed at that time because defendants did not comply with Local Rule 10(*l*), which requires that they present evidence that an attempt was made to reconcile their differences on objections to discovery.

5-19-76 Plaintiffs were directed to file a brief concerning the instruction given

---

1. 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981.

4–7–76 within 10 days or face dismissal of the action. (Note: No brief on this subject ever filed by plaintiffs' counsel.)

6–14–76 Motion by defendants to dismiss for failure to answer interrogatories, filed.

6–16–76 Order directing plaintiffs to appear on 6–28–76 and show cause why their case should not be dismissed and reasonable costs assessed.

6–19–76 Motion by plaintiffs' counsel for continuance of rule to show cause ordered for 6–28–76 and order continuing hearing until 6–30–76.

6–30–76 Rule to show cause came on for hearing and case was dismissed with prejudice. Counsel were ordered to submit briefs on the question of costs, attorney fees, and expenses.

7–14–76 Plaintiffs' motion and Court's order allowing additional time for plaintiffs to conduct discovery with respect to the costs and attorney fees question.

7–14–76 Motion by Piper, Brown, and Stromile to withdraw as counsel.

10–5–76 Motion for assessment of attorney fees and expenses came on for hearing.

■ Plaintiffs' counsel, Messrs. Piper, Brown, and Stromile, point to the fact that defendants failed to answer interrogatories propounded by them on September 2, 1975, until January 5, 1976. Piper, Brown, and Stromile would have us apply by analogy some aspect of the "clean hands" doctrine by arguing that, since defendants delayed in answering plaintiffs' interrogatories, plaintiffs equally were justified in delaying their answers. Plaintiffs' counsel obviously did not feel defendants' delay occasioned any real need for further action, because they never filed a motion to compel answers, pursuant to Rule 33(a) F.R.Civ.P. Furthermore, defendants had sought and received an extension of time within which to answer plaintiffs' interrogatories.

The action originally was set for trial on the merits on January 22, 1976. Defendants needed quick responses to their January 5, 1976, interrogatories because, although the original trial date had been upset, they knew a new trial date would be forthcoming shortly and they must have received answers to the interrogatories in order to decide which, if any, discovery depositions must be taken, or what further defensive action must be conducted. They filed a motion to compel answers, and the motion was granted, to which plaintiffs *never* have responded, and so admitted at the hearing held on June 30, 1976. (See Tr. of that hearing in record.)

■ Piper, Brown, and Stromile argue that Mr. Cordill, associate counsel for defendants, assured them that they would be given extra time after the date set by a Court order to answer interrogatories since taking the depositions on May 6 and 7 also would be burdensome. (1) Cordill said defendants *would* be agreeable to an extension of time (Piper, Brown, and Stromile Exhibit No. 4). (2) However, plaintiffs' counsel never applied for, or were granted, such an extension by the Court. (3) A Court order required answers by May 24, 1976, and defendants did not file their present motion to dismiss for failure to answer interrogatories and for attorney fees and costs until June 14, 1976, three weeks after the answers were due.

Plaintiffs' failure to respond to defendants' interrogatories was one of the reasons we dismissed the case (another being that their clients had expressed no further interest in it (Tr. 6/30/76, p. 3) and one reason for granting attorney fees and costs against plaintiffs' counsel, but there are others equally as strong.

Defendants gave notice on April 13, 1976, of taking plaintiff McPherson's deposition on May 6, 1976. That plaintiff did not appear on the 6th, so counsel agreed to recess the deposition until May 7, 1976. McPherson again failed to appear, so defendants moved to dismiss McPherson's claims. That motion was deferred to defendants' later motion to dismiss, which, as noted, was granted.

On April 7, 1976, counsel for plaintiffs were instructed to file briefs within ten

days as to whether the class action certification entered by Judge Real on June 9, 1975, in *Salinas v. Roadway, Inc., et al.,* then pending in the Western District of Texas, encompassed the would-be class in the action before us. No brief was filed by plaintiffs' counsel, even after warning was given to them on May 19, 1976.

These failures by Piper, Brown, and Stromile, as just described, escalated de-

fendants' costs substantially; and excerpts from plaintiffs' depositions evidence that plaintiffs' counsel did not even advise their clients that they were named as class plaintiffs, and the possible consequences of that having been done.[2]

It is obvious that plaintiffs' counsel purposefully enlarged and exaggerated the original claims about which their clients were complaining. Plaintiffs, themselves,

**2.** *MONK:*

"Q Well, do you know the people that you are . . . the names of the people that you are supposed to be representing?
A No, I am not saying . . . I am not sure . . . I don't know who I am representing, if I am representing anybody, I don't know.
Q Was it your intention in filing this suit, Mr. Monk, to represent anybody other than yourself?
A No, just . . . I filed this suit for me.
Q You don't claim to be representing anybody else then?
A No."

(Monk deposition pages 65 through 66, beginning at Line 20.)

"Q When you become a representative of other people, you take on certain responsibilities and liabilities for those people, and my question to you now is, are you willing to assume the responsibilities and liabilities that you have set out in your law suit here of representing other people?
A I wouldn't go as far as to say that, because I don't know anything about their case.
Q All right, sir; if this complaint is as I say it is, that, to-wit, that you are representing other people, do you want it that way?
A Well, I don't know enough about the deal to represent anybody, because I don't know . . . ."

(Monk deposition page 67, beginning at Line 2.)

"Q Well, involved in class actions, Mr. Monk, as I told you earlier, there are some liabilities and some responsibilities imposed on the class representatives, and some of those are costs and expenses and possibly attorneys' fees; and I want to ask you now, if you are willing, on behalf of this class, the people that you describe in this complaint, are you willing to take on the responsibilities for whatever costs may be imposed, whatever expenses may be imposed, or whatever attorneys' fees may be assessed against you on their behalf? Are you willing to do that?
A I don't quite follow you; I don't quite understand; as a matter of fact, I have to ask him, because I don't know exactly what you are talking about now.
Q Well, I am asking you if that's the responsibility that you want, and assume that I am

telling you the truth for the purposes of the question, assuming that you may be required to pay for notice to all of the members of this class that you have got described in this complaint; I want you to assume that you may be called upon to pay the costs of Court over there; and I want you to assume that the possibilities are if you lose this suit, that you may be required to pay attorneys' fees on behalf of yourself and all of these people that you claim to represent. And I am asking you do you want to do that?
A I want to pay mine.
Q But you don't want to pay anybody else's?
A No."

(Monk deposition pages 70 through 71, beginning at Line 20.)

"A There may be some, there may be several, I don't know; the case hasn't never been explained to me; there may be several more that have problems that are similar that I don't know about."

(Monk deposition page 69, beginning at Line 11.)

*GREEN:*

"Q Do you know, Mr. Green, any one that, either you or your attorneys have obtained any written or oral statement from concerning this law suit?
A I don't know what my attorneys have done, sir."

(Green deposition pages 77 to 78, beginning at Line 24.)

"Q Are you aware that you sued the Union?
A If it take suing the Union, well, then—the Union is not basically doing all the discrimination; it is Neal and his group, but the Union backs them up, like I am a member of the Union."

(Green deposition page 92, beginning at Line 20.)

"MR. STROMILE: We haven't concluded a figure, because we was not able to ascertain certain figures, but the form, the general form, that we would use would be that we would look to the day he made his application, and was turned down and we would determine the amount of pay that would have been received or the compensation that would have been received by the company that time up until now minus the amount that he makes now.

"MR. McKEE: What information do you need . . .

were most unenthusiastic about being class representatives, and their responsibilities and liabilities as class representatives surely were not explained to them adequately, if at all.

In order to assess attorney fees and costs against plaintiffs' counsel under 28 U.S.C. § 1927,[3] a two-step process is necessary.

First, counsel's unreasonable enlargement of plaintiffs' claims has been shown. Counsel never fully explained the true nature of the case to their clients, and clearly failed to represent plaintiffs in such a manner as to protect the rights of a considerably larger class.

"The implication of cases concerning adequacy of representation is that a party who wishes to prosecute an action on behalf of a class must protect the rights and interests of absent class members vigorously, tenaciously and effectively. He must meet the standard at every stage of the proceeding, including preparation of pleadings, pretrial motions, discovery, the trial itself, including the presentation of evidence, any post-trial briefing, and appeal.

\* \* \* \* \* \*

"MR. STROMILE: We want to know . . .
"MR. McKEE: You couldn't get?
"MR. STROMILE: We wanted to know the hourly rate, or as he said, the amount he would make per trip . . . we don't know . . we would have to know about seniority and all of that, what trips possibly he would have made, being employed by Roadway.
"MR. McKEE: Don't you have access to the Union contract?
"MR. STROMILE: I didn't have . . . the secretaries weren't in, and the other attorneys weren't in. .
"Q Mr. Green, are you a member of a union, and don't you have access to the Union contract with Roadway?
A I don't know; I am a member of the Union.
Q Well, I assume that you knew what the Union scale was for that job."
(Green deposition pages 94–95, beginning at Line 16.)
(One year after filing this suit, this plaintiff and his counsel still had not decided on a final amount for which plaintiff was suing.)
"Q Mr. Green, you don't purport to represent any person who was employed by Roadway Express, do you . . .

"The standard of thoroughness spills over into the discovery stage. The liberal discovery procedure provided by the federal rules allows counsel for all parties to an action to be prepared for trial on all factual issues and to preserve and protect their clients' positions and evidence. At this stage, as at the early pretrial stage, class counsel owes a greater duty to absent clients than to those who are present. Counsel must undertake substantial discovery to preserve testimony in favor of the class, to rebut possible claims by the parties adverse to the class, and to impeach opposing witnesses. \* \* \*" *Johnson, et al. v. Shreveport Garment Co. and Delta Garment Corp.,* Civil Action 74–494 (W.D.La., 1976), 422 F.Supp. 526, at page 534 (Stagg, J.—Involved inadequate presentation of the case. Messrs. Piper and Brown represented plaintiffs.)

Second, the jurisprudence concerning 28 U.S.C. § 1927, except in excusable circumstances, consistently requires that only such costs as normally would be allowed to the prevailing party be allowed. Thus, no punitive damages should be allowed; rather, an equitable shifting of responsibility for un-

A (Shakes head negatively.)
Q . . . In this class action? You are not claiming to be a person who is adequate to represent someone who works there; aren't you representing the people who applied, but are not . . .
A Right, and denied for some discriminatory reason.
Q But you are not asserting yourself as a representative of the people like Monk, for example, who was not promoted; you are not undertaking to represent that class are you?
A No, that's over my head."
(Green deposition page 96, beginning at Line 12.)

3. "§ 1927. Counsel's liability for excessive costs

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."

reasonable and vexatious costs from a party to his counsel is the result the statute envisions.[4]

As shown, the jurisprudence is legion that 42 U.S.C. § 2000e–5(k)[5] gives the trial Judge extensive discretion to assess appropriate attorney fees in cases justifying such an award. Of course, any such award should not discourage plaintiffs and their attorneys from filing what they in good faith believe to be valid complaints either individually or on behalf of a class, but will not condone vexatious litigation or expect defendants, or their counsel, to oppose un-

---

4. The following is a brief summary of cases citing 28 U.S.C. § 1927.

(1) Cases which have allowed costs to be assessed directly upon counsel:

*Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163 (7th Cir., 1968), cert. den. 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221, rehearing den. 395 U.S. 987, 89 S.Ct. 2128, 23 L.Ed.2d 776.—Defendant's attorney used harassing and obstructionist tactics in pre-trial proceedings to the extent that a new trial had to be granted in the case.

*Weiss v. United States,* 227 F.2d 72 (2d Cir., 1955), cert. den. 350 U.S. 936, 76 S.Ct. 308, 100 L.Ed. 817, rehearing den. 350 U.S. 977, 76 S.Ct. 431, 100 L.Ed. 847.—Plaintiff's attorney was given a warning that fees might be assessed against him for time and time again bringing suits to collect the proceeds of life insurance policies with little variation of his original complaint which suit he lost.

*Toledo Metal Wheel Co. v. Foyer Brothers & Co.,* 223 F. 350 (6th Cir., 1915).—Defendant's counsel excessively cross-examined witnesses, and improperly instructed another witness not to answer proper questions asked him in a deposition, and therefore costs were awarded against the attorney directly under the predecessor statute to 28 U.S.C. § 1927.

*Harrell v. Joffrion,* —— F.Supp. ——, Civil Action 74–1072 (W.D.La., 1976), affirmed in *per curiam* by Fifth Circuit on December 29, 1976, 545 F.2d 167.—All costs, including those of empanelling the jury, were assessed directly upon plaintiff's counsel for vexatiously increasing costs by totally failing to prove any evidence of malpractice in a medical malpractice suit.

(2) *Cases failing to allow costs to be assessed directly on counsel because their conduct was not vexatious or unreasonable enough to warrant such an award:*

*United States v. Ross,* 535 F.2d 346 (6th Cir., 1976).—Counsel did not vexatiously or intentionally increase costs.

*Hanley v. Condrey,* 467 F.2d 697 (2d Cir., 1972).—Costs were not assessed directly upon counsel though his appeal was patently frivolous since to do so might require notice and a hearing. (Here, we did have a hearing on October 5, 1976.)

*1507 Corporation v. Henderson,* 447 F.2d 540 (7th Cir., 1971).—28 U.S.C. § 1927 does not allow the imposition of attorney fees against an opposing party who brought a *pro se* complaint.

*West Virginia v. Charles Pfizer & Co.,* 440 F.2d 1079 (2d Cir., 1971), aff'd 404 U.S. 548, 92 S.Ct. 731, 30 L.Ed.2d 721.—There was not sufficient evidence of bad faith for costs to be assessed directly on counsel.

*Miles v. Dickson,* 387 F.2d 716 (5th Cir., 1967).—The Court felt that plaintiff's attorney acted in good faith, so no attorney fees were awarded against him personally.

*Brislin v. Killanna Holding Corp.,* 85 F.2d 667 (2d Cir., 1936).—The Court did not allow costs to be assessed against counsel personally, but reiterated that the trial Judge had great discretion to determine the extent to which an attorney before him had vexatiously and unreasonably increased costs.

*Motion Picture Patents Co. v. Steiner,* 201 F. 63 (2d Cir., 1912).—The record did not reveal evidence that counsel was being vexatious by prolonging examination of witnesses, therefore costs were not allowed against him personally. (This involved the predecessor statute to 28 U.S.C. § 1927.)

*Chrysler Corp. v. Lakeshore Commercial Finance Corp.,* 389 F.Supp. 1216 (D.C.Wis., 1975).—Costs were not awarded directly against counsel because there was a lack of evidence that counsel prompted the suit rather than plaintiff. (Here, there is direct evidence that counsel multiplied the proceedings by bringing a class action when plaintiffs did not know about or consent to it.)

5. "(k) In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

reasonably enlarged complaints such as these.

 In a recent Act approved October 19, 1976, Congress amended Title 42 to allow attorney fees to the prevailing party in a suit brought under 42 U.S.C. § 1981,[6] one of the statutes under which plaintiffs here have sued. It is abundantly clear from the above paragraph and from the very recent amendment to Title 42 that Congress has decided to allow attorney fees to be awarded more liberally in civil rights cases than in the past. The awards are not penalties, rather they are considered costs of effecting justice, and they are to be awarded judiciously.

An award of attorney fees is granted in many cases to assure plaintiffs a day in court. In this instance, we feel that an equally important interest is recognized, namely the discouragement of deliberate inaction by plaintiffs' counsel which prejudices both plaintiffs, by jeopardizing their claims, and defendants, by multiplying their costs.

Piper admitted several times that his law firm had been "dilatory" in prosecuting plaintiffs' case, but counsels' fault went much deeper than mere tardiness; they failed to respond to our orders; first, an order to file a brief clarifying whether a class action pending in the Western District of Texas encompassed the purported class here (counsel failed to file this brief even after a second notice which included a warning of dismissal if the brief were not filed promptly); and second, an order to answer interrogatories. Finally, and most significantly, plaintiffs' counsel deliberately used three plaintiffs who did not understand the law suit filed on their behalf or agree to represent others, to broaden the case into a class action.

At the October 5, 1976, hearing, counsel for Piper, Brown, and Stromile (representing their malpractice insurer) detected several errors in defendants' attorneys' time logs. Counsel should confer and confect a judgment in accordance with the above ruling deleting erroneously or duplicatively billed hours, but otherwise allowing all attorney fees and costs sought. Counsel for defendants justifiably worked hundreds of hours to defend this law suit which Piper, Brown, and Stromile improvidently enlarged and inadequately prosecuted, the cost of which they must now pay.

Simply because the case never was tried does not justify depriving attorneys of fees they justly have earned, all because of plaintiffs' counsels' "vexatious" behavior.

---

**6.** Public Law 94–559, 90 Stat. 2641:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as 'The Civil Rights Attorney's Fees Awards Act of 1976'.

"Sec. 2. That the Revised Statutes section 722 (42 U.S.C. 1988) is amended by adding the following: 'In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs'."