Mark SCHUTTS, Plaintiff,

v.

**BENTLY NEVADA CORPORATION, a Nevada corporation; John Doe and Mary Does I–X, individuals; Black and White Corporations I–V, corporations; and Able & Baker companies I–V, other entities, Defendants.**

No. CV–N–95–0624–ECR.

United States District Court,
D. Nevada.

May 7, 1997.

As Amended May 28 and June 5, 1997.

Joe E. Colvin, Reno, NV, for Plaintiff.

Charles S. Zumpft, Brook & Shaw, Minden, NV, for Defendants.

*ORDER*

EDWARD C. REED, Jr., District Judge.

**Introduction**

Presently before the court for decision is the Motion for Attorney Fees and Sanctions (Doc. # 35) filed by Defendant Bently Nevada Corporation. Bently Nevada seek to recover the costs of this litigation from Plaintiff Mark Schutts and his lawyer, Mr. Joe E. Colvin.

Defendant Nevada Bently cites as the source of the court's power to impose penalties in the form of fee-shifting awards and other sanctions two statutes, 28 U.S.C. § 1927 and 42 U.S.C. § 12205, and Fed. R.Civ.P. 11. In addition to these two sources of the court's power to sanction litigious misconduct, the court also possesses inherent authority to curb abuses of its processes. *See Chambers v. NASCO Inc.,* 501 U.S. 32, 46, 111 S.Ct. 2123, 2133–34, 115 L.Ed.2d 27 (1991) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962) (finding such authority not in statutes or rules but in the "control necessarily vested in courts to manage their own affairs"); *Ex parte Burr,* 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824) (upholding power of court to discipline attorneys who appear before it); *Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821) (noting "universal acknowledge[ment]" of judicial power to enforce courtroom decorum and to force submission to the court's "lawful mandates"); *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812) (declaring existence of "certain implied" judicial powers, such as the contempt power, necessary to the exercise of all other judicial authority)).

**I. Facts and Prior Proceedings**

Plaintiff Mark Schutts was employed by Defendant Bently Nevada Corporation from June 11, 1984 through August 31, 1994 at Defendant's place of business in the town of Minden, Nevada. On March 21, 1994, Mr. Schutts paid a visit to one Mark Beavers at the latter's residence. Mr. Schutts was apparently convinced that Mr. Beavers had defrauded one Debbie DeBraal, with whom Mr. Schutts had a close relationship, of a certain automobile. In the course of confronting Mr. Beavers with his suspicions, Mr. Schutts struck Mr. Beavers on the side of the head with an automatic pistol, knocking Mr. Beavers to the ground. Mr. Schutts then pressed the gun's barrel against Mr. Beavers' temple, saying, "I am going to blow your fucking brains out if you don't give me back the car."

Mr. Schutts was arrested in connection with this incident. He was charged with robbery with a deadly weapon, battery with a deadly weapon, carrying a concealed weapon, and aiming a firearm at another human being. Mr. Schutts informed his supervisors at Bently Nevada of the incident the following day, March 22, 1994. On March 30, 1994 Plaintiff was notified by Jim Schmid, a supervisor at Bently Nevada, that Mr. Schutts was being suspended with pay through June 11, 1994, at which time his employment with Defendant Bently Nevada would terminate. Mark Schutts subsequently entered a plea of guilty on two of the criminal charges against him, and on September 28, 1994, a judgment of conviction against Plaintiff was entered in the Ninth Judicial District Court for Douglas County Nevada, for carrying a concealed weapon and for aiming a firearm at a human being, in violation of Nev.Rev.Stat. § 202.350 and Nev.Rev.Stat. § 202.290, respectively.

On October 2, 1995, Mr. Schutts instituted this action through the filing of a civil complaint (Doc. # 1), alleging unlawful employment discrimination. He claimed that he was fired by Bently Nevada because he suffered from depression. He claimed that his assault on Mr. Beavers was a product of his depression, and that therefore he had been fired "because of" a mental disability, in violation of the Americans with Disabilities Act.

Defendant Bently Nevada filed its Answer (Doc. # 4) to the Complaint on November 2, 1995, and served it upon plaintiff's counsel on November 14, 1995. In early February 1996 Bently Nevada served various discovery requests upon plaintiff's counsel. At the end of March 1996, defense counsel wrote plaintiff's counsel to remind him that Plaintiff's re-

sponses to the discovery requests were long overdue, and to warn him that failure to comply with those requests within ten days would force defense counsel to seek the court's assistance. In the same letter, defense counsel, Mr. Charles S. Zumpft, indicated he considered the entire action frivolous: In Mr. Zumpft's view, Plaintiff had committed violent criminal acts, for which he had been lawfully discharged. Mr. Zumpft encouraged plaintiff's counsel, Mr. Colvin, to dismiss the case before additional time and money were wasted on Plaintiff's "baseless" claim.

Plaintiff's counsel apparently ignored Mr. Zumpft's March 25 letter, because on April 29, 1996, Bently Nevada filed a motion to compel discovery (Doc. # 12). Plaintiff failed to respond to *this* motion, and the court by Minute Order in Chambers filed May 23, 1996 (Doc. # 13) ordered Plaintiff to respond to the motion to compel discovery, and to provide the court with some explanation for his failure to comply with the local rules of practice of this court concerning motion practice.

On June 7, 1996, Plaintiff's counsel, Mr. Joe Colvin, filed an affidavit (Doc. # 14) opposing Bently Nevada's motion to compel. In his affidavit Mr. Colvin stated (a) that he and defense counsel had previously agreed to allow Plaintiff until April 18, 1996 to respond to Defendant's discovery requests, (b) that in mid-April 1996 he had been laid low with a "severe" back injury which kept him from his professional duties, and (c) that he had on May 28, 1996 responded to Bently Nevada's discovery requests on behalf of his client, Mr. Schutts.

In its Reply (Doc. # 21) in support of its motion to compel, filed on June 19, 1996, Bently Nevada acknowledged Plaintiff's counsel's health problems, but pointed out that Mr. Colvin's spinal condition should not have prevented him from at least informing defense counsel of the reason for the delay in complying with Defendant's discovery requests, or from seeking additional time. In addition, Bently Nevada reminded Plaintiff's counsel that Plaintiff had still not made the initial disclosures of information required by LR 26–1(a)(2).

The court granted Defendant's Motion to Compel (Doc. # 12) by Minute Order in Chambers (Doc. # 19) filed June 26, 1996. The court ordered Plaintiff to comply fully with Defendant's discovery requests, and to make the required Rule 26 disclosures, within ten days. The court also awarded Bently Nevada its litigation expenses incurred in moving to compel discovery, *see* Fed.R.Civ.P. 37, in the amount of $1312.50.

On July 3, 1996, defense counsel, Mr. Zumpft, again wrote plaintiff's counsel, Mr. Colvin. In this letter Mr. Zumpft attempted to highlight what he perceived as the fatal flaws in Plaintiff's case, including Defendant's position that Plaintiff was fired from his job purely because he attacked another man with a gun, in violation of company policy, to say nothing of Nevada's penal laws. Mr. Zumpft advised Mr. Colvin that based upon the record assembled at that time he had every confidence that Bently Nevada would prevail on summary judgment, and suggested that Mr. Colvin encourage his client, Mr. Schutts, to abandon his ADA claim. Finally, Mr. Zumpft informed plaintiff's counsel that in the event Bently Nevada prevailed on summary judgment, he, Mr. Zumpft, would seek an award of attorney's fees.

Defense counsel's cordial campaign against the protraction of what he considered Plaintiff's futile and wrongheaded ADA claim proved useless; on August 26, 1996, Bently Nevada filed its motion for summary judgment (Doc. # 24). Bently Nevada argued, and produced evidence in support of its argument, that it had terminated Plaintiff's employment not "because of" any of Plaintiff's alleged mental health problems, but (1) because Mr. Schutts had committed a crime, and had engaged in physically violent behavior and had made violent threats, in violation of written company policy and (2) in order to protect Bently Nevada and its employees from what it perceived as a substantial risk that Plaintiff might again engage in acts of violence.

The court agreed with Defendant, and granted summary judgment in favor of De-

fendant Bently Nevada, on the following grounds:

It is simply not debatable that employers may discharge employees who commit acts of misconduct. *Newland v. Dalton,* 81 F.3d 904, 906 (9th Cir.1996); *Collings v. Longview Fibre Co.,* 63 F.3d 828, 832 & n. 4 (9th Cir.1995). An employee who commits an act of misconduct may be fired, whether he or she is disabled within the meaning of the ADA, or an astronaut or Olympic athlete. Federal and state statutes which bar discrimination do not insulate disabled employees from discharge for acts for which a non-disabled employee could certainly be fired. Aggravated battery with a deadly weapon constitutes egregious misconduct for which employees are responsible regardless of any alleged disability. *Newland, ibid.*

Plaintiff admits in his affidavit filed in support of his opposition to summary judgment that he did attack Mark Beavers with a gun. Defendant has provided considerable evidence that it fired Plaintiff because of this act of violence. Plaintiff produces not a shred of evidence which casts any doubt upon Defendant's proffered explanation why it fired him. Even assuming (1) Plaintiff suffers from a qualifying ADA disability, and assuming further (2) that Defendant knew of his disability at the time it fired him, Plaintiff's criminal acts of violence justify Defendant's terminating his employment without any doubt whatsoever. The ADA and its Nevada counterpart do not protect Plaintiff from the consequences of his violent rage. *Newland, ibid.* (citing *Collings, id.* at 832–33; *Maddox v. University of Tennessee,* 62 F.3d 843, 848 (6th Cir.1995)). The court need not entertain this matter further.

Order filed Nov. 7, 1996 (Doc. # 31).

Subsequently the Clerk entered judgment in favor of Defendant Bently Nevada and against Plaintiff Mark Schutts. Judgment entered November 14, 1996 (Doc. # 32).

## II. Defendant's Claims for Sanctions and Attorney Fees

Because the standards for imposing sanctions and for awarding attorney's fees under the various sources of judicial authority invoked by Defendants differ, as do the persons liable thereunder, the court will address the availability of sanctions under those several provisions and principles *seriatim.*

### A. 42 U.S.C. § 12205

■ Defendants seek an award of attorney fees pursuant to 42 U.S.C. § 12205, which provides that

[i]n any action or administrative proceeding commenced pursuant to [the ADA], the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

This fee-shifting statute, which operates only in favor of a party prevailing on an ADA claim, is of relatively recent vintage, having been enacted only in 1990, and therefore has not yet been the subject of much judicial attention. It appears, though, that the courts which have adjudicated motions for attorney's fees under Section 12205 have relied on the body of law produced by motions for attorney's fees under the general fee-shifting statute applicable to federal statutory civil rights actions, the Civil Rights Attorney's Fees Award Act of 1976 (codified as amended at 42 U.S.C. § 1988). *See Robins v. Scholastic Book Fairs,* 928 F.Supp. 1027, 1036 (D.Or.1996) (noting scarcity of judicial interpretation of 42 U.S.C. § 12205, and gleaning Congressional intent that Section 12205 operate in the same manner as Section 1988 from legislative history); *Alexander S. By and Through Bowers v. Boyd,* 929 F.Supp. 925, 930 (D.S.C.1995) (finding analytical considerations for awards of attorney's fees motions under Section 12205 to be "essentially the same" as those for awards under Section 1988). This court will follow that lead, and analyze Defendant's attorney's fee motion under Section 12205 in light of the law applicable to Section 1988.

■ A defendant in a civil rights action is not entitled to an award of attorneys' fees merely because it prevails on the merits of

the case. *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1402 (9th Cir.), *cert. denied,* 513 U.S. 1000, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994). A prevailing civil rights defendant may be awarded attorney fees under Section 1988 (and, therefore, under 42 U.S.C. § 12205) only if the plaintiff's claim was frivolous, unreasonable, vexatious or groundless *ab initio,* or if the plaintiff continued to litigate after the claim clearly became so. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700–701, 54 L.Ed.2d 648 (1978)); *Franceschi v. Schwartz,* 57 F.3d 828, 832 (9th Cir.1995); *Sherman v. Babbitt,* 772 F.2d 1476, 1478 (9th Cir.1985) (permitting trial court to award defendant attorneys' fees where plaintiff's claim is "groundless" or "without foundation"). The court need not find subjective bad faith on the part of the plaintiff in order to award fees to the prevailing defendant. *Christiansburg, id.* at 422, 98 S.Ct. at 700–701. An action is frivolous, and therefore subject to fee-shifting against a losing plaintiff under Section 1988, if it lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989).

In addition to the availability of attorneys' fees to a prevailing defendant on a claim which lacked foundation *ab initio,* attorneys' fees may be awarded against a civil rights plaintiff if he or she continues to litigate after it becomes clear that the action lacks factual substance. *Kennedy v. McCarty,* 803 F.Supp. 1470 (S.D.Ind.1992); *Della Pietra v. New York State Organized Crime Task Force,* 630 F.Supp. 986 (W.D.N.Y.1986); *Wilson v. Continental Mfg. Co.,* 599 F.Supp. 284 (E.D.Mo.1984); *Spence v. Eastern Airlines, Inc.,* 547 F.Supp. 204 (S.D.N.Y.1982).

The complaint filed by Plaintiff Mark Schutts barely stated a valid ADA claim; the defendant's motion for summary judgment revealed the poverty of Plaintiff's grounds for instituting this action. Mr. Schutts engaged in violent criminal behavior, for which he was convicted by a Nevada court. Mr. Schutts was fired from his job after his em-ployer learned that he had pistol-whipped and threatened to kill another man.

When faced with a defense motion for summary judgment, a plaintiff is obliged to set before the court specific facts which indicate the existence of a genuine material dispute. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where there is a complete failure of proof on an essential element of the plaintiff's claim, the defendant will be granted summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

A prima facie showing of discrimination on the basis of disability pursuant to the ADA includes proof (1) that the plaintiff is a "qualified" individual with a disability, (2) who suffered an adverse employment action, (3) *because of* her disability. *Sanders v. Arneson Prods., Inc.,* 91 F.3d 1351, 1353 (9th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997); *see also White v. York Int'l Corp.,* 45 F.3d 357 (10th Cir.1995). An individual is not "qualified" if he poses a significant risk to others' safety by virtue of a disability, which risk cannot be eliminated by reasonable accommodation. 42 U.S.C. § 12111(3); 42 U.S.C. § 12113(b); 29 C.F.R. § 1630.2(r); *Doe v. University of Maryland Med. Sys. Corp.,* 50 F.3d.1261, 1265 (4th Cir.1995); *see also Palmer v. Circuit Court of Cook County,* 905 F.Supp. 499, 509 (N.D.Ill.1995) (noting that the "essential functions" of any job include avoiding violent behavior which threatens the safety of others). To this extent it would simply have been impossible for Plaintiff to make out a prima facie case.

In August 1995 the U.S. Court of Appeals for the Ninth Circuit ruled that employers are entitled to discharge employees for acts of misconduct even where the employee's misconduct may have been related to a disability. *Collings v. Longview Fibre Co.,* 63 F.3d 828, 832–33 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996). In November 1996 the Ninth Circuit reiterated this rule in *Newland v. Dalton,* 81 F.3d 904, 906 (9th Cir.1996) (holding that Rehabilitation Act "does not

immunize [an alcoholic employee] from the consequences of his drunken rampage").

Plaintiff filed his complaint on October 2, 1995; he filed his brief in opposition to Defendant's motion for summary judgment on September 13, 1996. The *Collings* decision thus preceded Plaintiff's complaint by more than six weeks, and preceded his brief opposing summary judgment by more than one year.[1] Plaintiff has not, nor could he have, denied committing the crimes which precipitated Defendant's terminating his employment. Plaintiff has not, nor can he, dispute the existence of corporate policies adopted by Defendant, pursuant to which an employee who commits a crime, and/or engages in an act of violence may be summarily discharged.

These facts, and controlling federal judicial authority extant prior to the initiation of this action, should have made plain to Plaintiff and his lawyer the futility—and impropriety—of filing the complaint, and of opposing Defendant's meritorious summary judgment motion. "Counsel who are admitted to practice in a federal court take on themselves the obligation to know the relevant law." *In re Disciplinary Action Against Mooney,* 841 F.2d 1003, 1006 (9th Cir.1988). "A lawyer must know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action." *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 1497, 52 L.Ed.2d 72 (1977).

Unfortunately for the parties, the court, and this nation's taxpayers, Plaintiff and his lawyer proceeded with this action, undaunted by (and/or blissfully unaware of) Ninth Circuit authority vitiating Plaintiff's claim. *Collings* should have made clear to Plaintiff and his lawyer that the case was without merit. Plaintiff's and his attorney's decision to proceed with the litigation despite *Collings* is precisely the type of irresponsible behavior which merits an award of attorney fees in favor of Defendants. *Cone Corp. v. Hillsborough County,* 157 F.R.D. 533, (M.D.Fla.1994) (approving attorney's fee award in case where review of applicable law should have indicated to reasonably competent attorney that plaintiff could not make out prima facie case). *Cf. Coverdell v. Department of Soc. & Health Servs.,* 834 F.2d 758, 770 (9th Cir. 1987) (denying award of attorney fees where controlling case was decided *after* parties had filed their briefs).

For these reasons, the court concludes (1) that the original complaint was baseless, meritless and frivolous, (2) that Plaintiff continued to litigate despite an obvious absence of legal support for his claim, (3) that Plaintiff caused Defendant to incur wholly unnecessary attorney fees and costs by ignoring clear legal authority devastating to his claim, and (4) that Plaintiff improperly opposed Defendants' summary judgment motion despite his inability to distinguish *Collings* or *Newland,* cited by Defendant in its summary judgment motion.

The court therefore finds Defendant entitled to recover from Plaintiff an award of attorney fees under 42 U.S.C. § 12205. *See, e.g., Wisconsin v. Glick,* 782 F.2d 670, 673

1. The Ninth Circuit is hardly alone among the federal courts of appeal in concluding that the ADA will not protect a disabled employee who commits acts of misconduct, despite a relationship between the misconduct and the disability. The First, Third, Fourth, Sixth, Seventh and Tenth Circuits follow the same rule. *See, e.g., Williams v. Widnall,* 79 F.3d 1003, 1006 (10th Cir.1996) (ADA does not require employer to accept egregious behavior from a disabled employee when the same behavior by nondisabled employee would require discharge); *Despears v. Milwaukee County,* 63 F.3d 635, 637 (7th Cir. 1995) (ADA does not require employer to overlook crimes committed by employee even where such behavior is "caused" by employee's disability); *Maddox v. University of Tennessee,* 62 F.3d 843, 847 (6th Cir.1995) (no ADA violation to discharge disabled employee for misconduct for which non-disabled employee could lawfully be discharged); *Leary v. Dalton,* 58 F.3d 748, 753 (1st Cir.1995) (Rehabilitation Act does not protect employees from consequences of their own misconduct, even if caused by a disability); *Tyndall v. National Educ. Ctrs.,* 31 F.3d 209, 214–15 (4th Cir.1994) (no ADA violation where employer fires employee for misconduct related to disability); *Little v. Federal Bureau of Investigation,* 1 F.3d 255, 259 (4th Cir.1993) (clear that employer may discharge employee for egregious misconduct irrespective of any disability); *Taub v. Frank,* 957 F.2d 8, 10 (1st Cir.1992) (employee's criminal conduct precluded status as "qualified handicapped person" under Rehabilitation Act); *Copeland v. Philadelphia Police Dep't,* 840 F.2d 1139 (3d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989).

(7th Cir.1986) (ruling that legal argument "in the teeth of law" is vexatious, and therefore sanctionable). Defendant, however, has sought recovery of its attorneys's fees not only under 42 U.S.C. § 12205, but also under 28 U.S.C. § 1927. The two statutes, while both permitting recovery of attorneys' fees from adversaries, differ in several important respects.

## B. 28 U.S.C. § 1927

■ Section 1927 authorizes federal courts to punish barratry by requiring offending lawyers personally to satisfy their opponents' litigation debts. It applies in any proceeding in federal court, operates solely upon attorneys, rather than their clients, and applies with equal force against winners and losers. In these respects it differs significantly from 42 U.S.C. §§ 1988 and 12205.

■ First, whereas Sections 1988 and 12205 permits recovery of fees only by the winning side, Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants. It is concerned only with limiting the abuse of court processes." *Roadway Express,* 447 U.S. at 762, 100 S.Ct. at 2462. Second, Section 1927 by its own terms shifts fees to counsel personally. Sections 1988 and 12205, by contrast do not permit the assessment of fees upon *counsel,* but only upon a losing *party. See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 756–57, 100 S.Ct. 2455, 2458–59, 65 L.Ed.2d 488 (1980); *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 535 (5th Cir.1996) (remanding attorneys' fees award against plaintiff under *both* 42 U.S.C. § 1988 and 28 U.S.C. § 1927 for express purpose of apportioning fees as between plaintiff (under § 1988) and plaintiff's counsel (under § 1927)); *Brown v. Borough of Chambersburg,* 903 F.2d 274 (3d Cir.1990).[2] Under

Sections 1988 and 12205, a losing civil rights plaintiff must answer for the conduct of her lawyer, and attorneys' fees, if awarded, are assessed against that plaintiff, rather than against counsel. *Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911, 915–16 (11th Cir. 1982); *Monk v. Roadway Express, Inc.,* 599 F.2d 1378, 1383 (5th Cir.1979), *aff'd sub nom. Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Prate v. Freedman,* 583 F.2d 42, 48 (2d Cir. 1978) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962)). If the plaintiff's attorney's actions were negligent, Plaintiff can sue him for malpractice. Third, whereas Section 1988 applies only to civil rights actions, and Section 12205 applies only to actions under the ADA, Section 1927 applies to any proceeding in the courts of the United States.

For these reasons, the Supreme Court has ruled that Section 1927 applies with equal force in the context of federal civil rights litigation, and is not supplanted by the specific fee-shifting provision applicable to civil rights matters. *Roadway Express,* 447 U.S. at 763, 100 S.Ct. at 2462–63.

The full text of Section 1927 in its current version provides

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (West 1994).[3]

■ Unlike Sections 1988 and 12205, under which the court may award attorneys' fees against a losing plaintiff without any

---

**2.** *But see Davidson v. Allis–Chalmers Corp.,* 567 F.Supp. 1532 (W.D.Mo.1983) (permitting joint and several fee assessment under Section 1988 against both plaintiff and plaintiff's counsel); *Monk v. Roadway Express, Inc.,* 73 F.R.D. 411 (W.D.La.1977) (permitting "equitable" fee assessment against plaintiff's counsel personally for "unreasonable" and "vexatious" costs), *judgment vacated on other grounds,* 599 F.2d 1378 (5th Cir.1979), *cert. granted,* 444 U.S. 1012, 100 S.Ct. 659, 62 L.Ed.2d 640, *and judgment aff'd. sub*

*nom. Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

**3.** The statute was originally enacted as Act of July 22, 1813, 3 Stat. 21, and was amended by Act of Feb. 26, 1853, 10 Stat. 162, and further amended by Act of June 25, 1948, ch. 646, 62 Stat. 957, and by Pub.L. 96–349, § 3, 94 Stat. 1156 (Sept. 12, 1980).

showing of bad faith on the part of the plaintiff, *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700–701, 54 L.Ed.2d 648 (1978), an award under Section 1927 requires, at least in this judicial circuit, a finding by the court that the party to be assessed acted recklessly or in bad faith. *Goehring v. Brophy*, 94 F.3d 1294, 1306 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1335, 137 L.Ed.2d 495 (1997); *Romero v. City of Pomona*, 883 F.2d 1418, 1428–29 (9th Cir.1989); *Kanarek v. Hatch*, 827 F.2d 1389, 1391 (9th Cir.1987); *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983). Bad faith is present whenever an attorney knowingly or recklessly raises a frivolous argument, or makes a meritorious argument or claim for the purpose of harassing an opponent. *Trulis v. Barton*, 67 F.3d 779, 788 (9th Cir.1995), *as amended*, 107 F.3d 685 (9th Cir.1995).

The Ninth Circuit has looked favorably upon Section 1927 penalties:

> [I]mposing a monetary penalty on counsel is an appropriate sanction considerably less severe than holding counsel in contempt, referring the incident to the client or bar association, or dismissing the case.... [I]t is appropriate that sanctions such as these are directed at the lawyers responsible, rather than the litigants.

*Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516, 520–21 (9th Cir.1983) (internal citations omitted).[4]

■ But before sanctions may validly be imposed, the conduct in question must be sanctionable under the precise authority relied upon. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir.1988), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). In the Ninth Circuit, Section 1927 cannot be applied to a complaint. Section 1927 applies only to unnecessary filings and tactics *once a lawsuit has begun:* It is only possible to "multiply" a proceeding after the complaint is filed. Therefore, the filing of a complaint may be sanctioned under Fed.R.Civ.P. 11 or under the court's inherent power, but not under Section 1927. *In re Keegan Management Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (citing *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir.1986), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987)).

■ In the present action, the court finds ample reason to impose sanctions under Section 1927. Plaintiff's counsel repeatedly ignored proper requests for discovery, forcing Defendant to seek, and the court to grant, a motion to compel discovery. Plaintiff's counsel neglected to participate in requisite Fed. R.Civ.P. 26(f) "meet and confer" sessions with defense counsel—a conference which likely would have resulted in a far more timely disposition of this wretched and useless civil rights action. Plaintiff's counsel disregarded strong hints from defense counsel that Plaintiff's claim was a certain loser under current federal law. Finally, even when cited to controlling authority devastating to his client's claim, Plaintiff's counsel

---

4. The Sixth Circuit appears more liberal in its construction of Section 1927. That circuit's courts have concluded that Congress must have intended, in amending Section 1927 following the Supreme Court's decision in *Roadway Express*, to authorize penalties under that section for objectively "unreasonable and vexatious" multiplication of litigation even absent any "conscious impropriety." *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir.1986). At the time of the *Roadway Express* decision, Section 1927 did not permit attorney liability for an adversary's fees; the Court's affirmance of the fee award against counsel personally for litigating in "bad faith" rested upon the "inherent power" of the trial court, rather than upon any statutory provision. In order to avoid concluding that the amendment to the statute added nothing substantive to the law of attorney liability for vexatious litigation, the Sixth Circuit reasoned that such liability could be imposed for subjective bad faith under the court's inherent powers under *Roadway Express*, and for otherwise vexatious and unreasonably multiplicitous litigation (without bad faith) under the amended Section 1927. *Jones v. Continental Corp., ibid.*

The Fifth Circuit advises courts to mete out punishment under Section 1927 "sparingly," and further cautions that except when the entire proceeding has been unwarranted, unreasonable, and vexatious, and should therefore neither have been initiated nor persisted in, it will be inappropriate under Section 1927 to shift the *entire* financial burden of an action's defense onto plaintiff's counsel. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996) (quoting *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir.1994)).

filed a wholly worthless opposition to summary judgment.

Mr. Colvin has exhibited "bad faith" within the meaning of Section 1927. He at least recklessly opposed Defendant's well-taken motion for summary judgment. *See Trulis v. Barton,* 67 F.3d 779, 788 (9th Cir.1995). Mr. Colvin is therefore liable for Defendant's attorneys' fees and costs from August 26, 1996—in other words, from the moment he was first referred by defense counsel, in Defendant's motion for summary judgment, to controlling judicial authority, authority which should have made plain to any minimally competent lawyer the total meritlessness of the complaint.

### C. Rule 11

Under Rule 11 of the Federal Rules of Civil Procedure, an attorney's presentation to the court (whether by signing, filing, submitting or later advocating) of any pleading, motion or other paper, thereby certifies (1) that it is not filed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation, (2) that the claims, defenses and other legal contentions it contains are warranted by existing law or at least by a nonfrivolous, bona fide argument for the extension, modification or reversal of existing law, and (3) that the allegations and other factual contentions have some evidentiary support, or are at least likely to have such after a reasonable opportunity for further investigation or discovery. Fed.R.Civ.P. 11(b). *See also Golden Eagle Dist. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536 (9th Cir.1986).

Breach of Rule 11's implied warranty of lawyerly conduct gives rise to sanctions against the represented party, the lawyer, or both. *Id.* Sanctions under Rule 11 must be imposed upon litigants and counsel who file baseless papers without first conducting a reasonable and competent inquiry. *In re Keegan Management Co. Sec. Litig.,* 78 F.3d 431, 434 (9th Cir.1996).

Rule 11 sanctions · are imposed where a pleading as a whole is frivolous and of a harassing nature. *Romero v. City of Pomona,* 883 F.2d 1418, 1429 (9th Cir.1989).

In the present matter, the filing of the complaint constitutes grounds to subject Plaintiff and his attorney to sanctions under Fed. R.Civ.P. 11. *See, e.g., McGregor v. Board of County Comm'rs,* 130 F.R.D. 464, 466 (S.D.Fla.1990) (imposing Rule 11 sanctions where plaintiff "should reasonably have realized, from basic legal research," that the claim as stated in the complaint lacked legal basis), *aff'd,* 956 F.2d 1017 (11th Cir.1992). Moreover, under Rule 11, a violation may warrant imposition of fees covering the entire course of the litigation if the complaint was filed in violation of the Rule. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 41 n. 8, 111 S.Ct. 2123, 2131 n. 8, 115 L.Ed.2d 27 (1991). Finally, the court is empowered to *sua sponte* act to impose sanctions under the Federal Rules of Civil Procedure. *Ibid.*

Here, the complaint was neither well-grounded in fact, nor warranted by existing law, or any good faith argument for extension or reversal of existing law. After minimally reasonable legal research, Mr. Colvin could not have had an objectively reasonable basis for any portion of the complaint. Plaintiff's ADA claim lacked foundation in law; Plaintiff's vain opposition to summary judgment contains absolutely no discussion of the Court of Appeals' decisions in *Collings* and *Newland,* despite their citation in Defendant's motion. It appears that Plaintiff's counsel simply could not be bothered either to dig up any "existing law" in support of Plaintiff's claim, or to make a good faith argument for the law's reversal or modification. Rule 11 sanctions may therefore be properly imposed. *West Coast Theater Corp. v. City of Portland,* 897 F.2d 1519 (1990).

Under Rule 11 the imposition of liability for the attorneys' fees of a party's adversary is but one of a range of possible sanctions. The court may, for example, censure or reprimand a lawyer, require him or her to participate in some program of continuing legal education, order payment of a fine into court, or refer the matter to the disciplinary organ of the state bar. Fed. R.Civ.P. 11 advisory committee notes to 1993 amends. In the present matter, it appears that an award to Defendant of attorneys' fees, to be shared by Plaintiff Schutts and his

lawyer, Mr. Colvin, will accomplish at least the compensatory aims of the sanctions motion. Rule 11's goal of deterring future litigation abuses will, however, be attained only by imposing an additional penalty designed to vindicate the court's own interest in the efficiency and validity of its own processes.

### D. Inherent Power

■■■■■ The most prominent of the court's inherent powers is, of course, the power to hold a party, a witness, a lawyer, even a spectator in contempt. *See Ex parte Robinson,* 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873). A federal court must exercise its contempt power to protect the due and orderly administration of justice and to maintain the authority and dignity of the court. *Cooke v. United States,* 267 U.S. 517, 539, 45 S.Ct. 390, 395–96, 69 L.Ed. 767 (1925) (*quoted in Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)); *see also* 4 William Blackstone, Commentaries *282–85. A court's power over members of its bar extends at least as far as its power over litigants. *Roadway Express,* 447 U.S. at 766, 100 S.Ct. at 2464. In some circumstances, this court may in the exercise of its inherent powers assess attorneys' fees against counsel. *Id.* at 765, 100 S.Ct. at 2463–64; *see also Schwarz v. United States,* 384 F.2d 833, 836 (2d Cir.1967) (suggesting that inexcusable neglect by counsel can justify assessment against her personally of opponent's costs and attorneys' fees) (*quoted in Roadway Express,* 447 U.S. at 767 n. 13, 100 S.Ct. at 2464 n. 13).

■■■■■ The court's inherent power therefore permits it to assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive purposes. *Chambers v. NASCO,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 2133–34, 115 L.Ed.2d 27 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)). This inherent power is not affected, supplanted or otherwise constrained by the existence of statutory and rule-based authority to shift attorneys' fees onto a party or counsel, but remains an independent source of fee-shifting

authority. *Chambers,* 501 U.S. at 46–50, 111 S.Ct. at 2133–36; *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986); *see also Roadway Express,* 447 U.S. at 765, 767, 100 S.Ct. at 2463, 2464–65. It may be used to fill the interstices between the various fee-shifting rules and statutes, or when for some other reason the court in its informed discretion determines that neither a fee-shifting statute or rule appears equal to the task. *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2135–36 (recommending, but not demanding, that bad-faith litigation conduct be sanctioned, where possible, under the Rules or an appropriate statute).

In the present matter, because it appears that the improper litigation practices of Plaintiff and his lawyer may be sanctioned under 42 U.S.C. § 12205, 28 U.S.C. § 1927, and Fed.R.Civ.P. 11, the court finds it unnecessary to inquire, for the purpose of sanctions under its inherent power, whether Plaintiff or his lawyer acted with the requisite degree of subjective bad faith. Their conduct will be sanctioned under the appropriate rule and statutes.

### III. Summary of Standards

The better to reconcile and place in proper perspective the various authorities for judicial sanctions invoked by Defendants and the court, herewith a recapitulation of the relevant standards:

Under 42 U.S.C. § 12205, as discussed above, the court is not required to find subjective bad faith on the part of the plaintiff in order to award fees to the prevailing defendant. An action is frivolous, unreasonable and without foundation, and therefore subject to fee-shifting against a losing plaintiff under Section 12205, if it lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989). The test is purely objective, although the existence of subjective bad faith certainly constitutes additional support for the shifting of fees under Section 12205. *See Anthony v. Baker,* 767 F.2d 657 (10th Cir.1985). Only parties to the litigation are subject to fee awards under Section 12205.

Rule 11 measures the propriety of a lawyer's practice under an objective standard. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990) (en banc); *Zaldivar*, 780 F.2d at 829. Sanctions may be imposed on either lawyer or party, or both. The issue in determining whether to impose sanctions under Rule 11 is whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the offending paper was well-founded. *In re Keegan Management Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir.1996). In this sense the test is purely objective, asking, (1) Did the lawyer do a reasonable amount of work before she filed the paper? and (2) Could a reasonable lawyer have believed, after doing a reasonable amount of work, that the paper was well-founded? *Id.*

Section 1927 sanctions require a finding that the lawyer acted in "bad faith," defined in this judicial circuit as "knowingly or recklessly" raising a frivolous argument. *Trulis v. Barton*, 67 F.3d 779, 788 (9th Cir.1995). *See also United States v. Blodgett*, 709 F.2d 608, 611 (9th Cir.1983). Only attorneys are subject to sanctions under this section. The standard of liability is partly objective, partly subjective: The court asks (1) was the argument frivolous? and (2) did the attorney act knowingly or recklessly with respect to the frivolousness of the argument? *In re Keegan*, 78 F.3d at 436.

Sanctions under the court's inherent power may be imposed only for "willful abuse of the judicial process or bad faith conduct." *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir.1995).

## IV. Due Process Concerns

■■■ Before the court imposes sanctions, it must address one issue of constitutional dimension. The imposition, by a federal court, of sanctions against a party or his lawyer implicates the federal constitutional requirement, set out in the Due Process Clause of the Fifth Amendment, that no person may be deprived of property without first being given notice and an opportunity to be heard. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113

(1971). The precise form of procedural protections required depends upon an evaluation of all the circumstances and an accommodation of competing interests. *Tom Growney Equip., Inc. v. Shelley Irr. Dev.*, 834 F.2d 833, 835 (9th Cir.1987) (citing *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738–39, 42 L.Ed.2d 725 (1975)). The individual's right to fairness and accuracy must be accorded due respect, as must the court's need to act quickly and decisively. *Tom Growney Equip., ibid.*

■■■ In this context the Due Process Clause is satisfied where prior to the imposition of sanctions the party affected has had adequate notice of the possibility of sanctions and an opportunity to respond. *Pan–Pacific & Low Ball Cable Television Co. v. Pacific Union Co.*, 987 F.2d 594, 597 (9th Cir.1993); *Hudson v. Moore Bus. Forms, Inc.*, 898 F.2d 684, 686 (9th Cir.1990). The person to be sanctioned must have a chance to demonstrate that his or her conduct was not taken recklessly or willfully, *FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986), and to explain why sanctions ought not be imposed. *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir.1994), *cert. denied*, 514 U.S. 1035, 115 S.Ct. 1400, 131 L.Ed.2d 287 (1995). An opportunity to respond orally is not required; a full opportunity to respond in writing is sufficient. *Hudson*, 898 F.2d at 686.

■■■ Plaintiff's counsel was, or should have been aware of the risk of sanctions, ever since defense counsel Zumpft warned him, by letter dated July 3, 1996, that unnecessary prolongation of this ADA claim might very well result in an award of sanctions and attorneys' fees. Mr. Colvin was served with Defendant's motion for attorneys' fees and sanctions in November 1996. That motion clearly identifies the conduct to be sanctioned. It is not necessary that Mr. Colvin have been aware of the specific rule-based or statutory authority under which sanctions might be imposed. Notice of the possibility of sanctions may be either actual or constructive. *Alaska Land Leasing, ibid.*

Likewise, Mr. Colvin has had his meaningful opportunity to respond, indeed, he filed a brief (Doc. # 36) opposing the motion for

fees and sanctions, supported by his own affidavit.

Counsel's brief (Doc. # 36) in opposition to the motion for attorney fees reveals his failure to conduct the proper amount of legal research into the merits of Plaintiff's claim. Mr. Colvin admits that on the date he caused Plaintiff's complaint to be filed he "was not aware of the *Collings* case." Mr. Colvin actually attempts to place at least a portion of the blame for his ignorance of applicable law on defense counsel, complaining that "[n]ot once did defense counsel ever direct Plaintiff's attorney's attention to *Collings v. Longview Fibre Co., supra,* or *Newland v. Dalton* . . . . If he had, due consideration would have been given to dismissing the case."

The responsibility for discovering relevant legal authority rested with Plaintiff's counsel himself. A lawyer admitted to practice before this court must apprise himself or herself of the relevant law. A lawyer may not diminish this responsibility by asserting his or her reliance on another lawyer. *In re Disciplinary Action Against Mooney,* 841 F.2d 1003, 1006 (9th Cir.1988).

Counsel insists that in September, 1995, when he researched Plaintiff's complaint, it was the law in this jurisdiction that an employer who discharges an employee for an act of misconduct related to a disability may be liable under the ADA. This statement is false. *Collings* was decided on August 14, 1995. In September 1995, therefore; *Collings* was the law. In addition, Plaintiff's counsel complains that Defendant's motion for summary judgment cited *Newland v. Dalton* merely "in passing," and complains further that defense counsel, being "aware that Plaintiff's counsel had overlooked *Newland,*" failed to make "a simple telephone call." Given Plaintiff's counsel's documented habit of ignoring both formal and informal communications from opposing counsel, it strikes the court as somewhat galling that Plaintiff's counsel should expect such solicitousness. More to the point, Mr. Colvin should know that it is not a litigant's duty to educate his or her adversary in the relevant law.

Plaintiff's counsel claims he "was not aware of *Newland*" when he filed Plaintiff's brief in opposition to the defense motion for summary judgment. Here the court is mystified. *Newland* is cited in full, accompanied by an accurate parenthetical describing its holding, on Page 17 of Defendant's brief in support of its summary judgment motion. Plaintiff's counsel also advances the truly bizarre argument that although the *Newland* decision "bind[s] this court, it is not the law of the land until the Supreme Court reconciles it with [a decision by the Second Circuit]." Whether *Newland* and *Collings* are the "law of the land" or not, they are decisions by the federal court of appeals for this federal judicial district. As such they are the law, here, in this court. End of story.

Plaintiff's counsel failed to make the minimal pre-filing effort to ascertain the legal viability of Plaintiff's claim. None of counsel's arguments in his brief opposing Defendant's motion for sanctions is sufficient to shield him from sanctions under Section 12205, Section 1927, or Rule 11. In short, counsel's brief in opposition to the attorneys' fees motion offers no legitimate basis upon which to deny sanctions. He has had his chance to prepare a defense and to explain his questionable conduct. The court has considered the severity and propriety of the proposed sanctions in light of Mr. Colvin's explanation for his conduct. The facts supporting the order imposing sanctions have now been fully set forth in the record. Mr. Colvin has thus had all the process he is due. *Kirshner v. Uniden Corp.,* 842 F.2d 1074, 1082 (9th Cir.1988).

## V. Who Will Pay, and How Much?

Some courts have, in determining whether to grant a fee award against a losing civil rights plaintiff under Section 1988, considered the extent of the lawyer's responsibility for bringing the frivolous claim. *Brown v. Fairleigh Dickinson Univ.,* 560 F.Supp. 391, 407 n. 7 (D.N.J.1983) (citing *LeGare v. University of Pennsylvania Med. Sch.,* 488 F.Supp. 1250, 1257 (E.D.Pa.1980); *Black Musicians v. Local 60-471, American Fed'n of Musicians,* 442 F.Supp. 855, 859 (W.D.Pa. 1977)); *Herrera v. Farm Prods. Co.,* 540

F.Supp. 433, 435 (N.D.Iowa 1982). In *Brown*, the court justified imposing Section 1988 liability on a losing civil rights plaintiff who "took an active part" in the litigation, "work[ing] shoulder to shoulder with counsel." In *Herrera*, on the other hand, the court declined to penalize the plaintiff under Section 1988, on the grounds that he was a recent Mexican immigrant with only a grade-school education, limited facility with the English language and even less understanding of the American legal system.

At least two panels of the United States Court of Appeals for the Ninth Circuit has ruled that a federal trial court, in determining the proper amount of attorneys' fees to be awarded a prevailing defendant, should consider, in addition to the twelve *Kerr* factors,[5] the financial resources of the plaintiff. *Patton v. County of Kings*, 857 F.2d 1379, 1382 (9th Cir.1988); *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 n. 4 (9th Cir.1987) (citing *Munson v. Friske*, 754 F.2d 683, 697–98 (7th Cir.1985); *Charves v. Western Union Tel. Co.*, 711 F.2d 462, 465 (1st Cir.1983); *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir.1982)). On the other hand, the court may not *refuse* to award attorneys' fees to a prevailing defendant solely on the ground of the plaintiff's financial condition. *Miller*, 827 F.2d at 621 n. 5 (citing *Durrett, ibid.*). *Contra Herrera v. Farm Prods. Co.*, 540 F.Supp. 433, 435 (N.D.Iowa 1982) (declaring that losing civil rights plaintiff's poverty alone justified denying Section 1988 fee award to defendants).

The record before the court at present reveals no equitable considerations as operated in favor of the illiterate plaintiff in *Herrera*. Nor does Plaintiff appear to be in such dire financial straits that his sharing with his lawyer at least a portion of the costs of this litigation would cause him financial ruin, *see*

*Miller*, 827 F.2d at 621. The total fees and expenses sought by Defendants amount to $39,842.14 (including the court's previous award of Defendant's expenses incurred in connection with its motion to compel discovery, in the amount of $1312.50).

■ It therefore appears to the court proper to apportion the blame, and hence the financial responsibility for the above-described abuses of this court's scant resources, between Plaintiff and his lawyer. The court does not expect the equivalent levels of legal knowledge from represented litigants and their attorneys. It is the lawyer's duty, both to the client and to the institutions of justice, to investigate the factual and legal bases for recovery on behalf of the client, to advise the client, and to act in accordance with the rules of substantive law and the rules of procedure.

■ The court will adopt the procedure employed by the Fifth Circuit in *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir.1996), and apportion financial responsibility between Plaintiff Mark Schutts (under 42 U.S.C. § 12205) and his counsel, Mr. Joe Colvin (under 28 U.S.C. § 1927). Determination of the actual amount of an attorneys' fees to be awarded remains within the sound discretion of the court. *United States v. Washington*, 935 F.2d 1059 (9th Cir.1991).

Plaintiff sued Defendant under the Americans with Disabilities Act, 42 U.S.C. 12201 et seq., for violation of his right not to be discriminated against solely by reason of a disability, seeking $50,000 in general damages, unspecified special damages, punitive damages and an award of attorney's fees. Given the ready availability of controlling judicial precedents authorizing employers to discharge even disabled employees who commit acts of misconduct, the legal and factual

---

**5.** Those factors are (1) the time and labor required, (2) the novelty and difficulty of the legal questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney(s), (10) the "undesirability" of the case, (11) the nature and length of the lawyer's professional relationship with the client, and (12) awards in similar cases. *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 n. 4 (9th Cir.1987) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976)). The local rules of practice adopted by this federal judicial district expressly incorporate the *Kerr* factors into the rule governing motions for attorneys' fees. LR 54–16.

issues should have presented a competent attorney with no great challenge. Defendant won a motion for summary judgment.

Defense counsel spent a total of 297.7 hours from initial review of the complaint through preparation of their motion for attorney's fees. The legal questions raised by the complaint were neither novel nor complex in any significant degree, and in fact have been definitively resolved by the United States Court of Appeals for the Ninth Circuit. The court recognizes that civil rights actions in general require a moderately high level of skill and understanding. In this particular matter, defense counsel were forced to devote considerable time defending their client, to the exclusion of their responsibilities to other clients.

 In awarding attorneys' fees, a court may adopt the hourly rate charged by members of the local legal community of similar skill and experience. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433–36, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983).

Although five different attorneys have participated in the defense of this matter, the law firm engaged by Defendant Bently Nevada has, pursuant to a retainer agreement, billed Defendant for legal representation at an hourly rate of $125. The court agrees that $125 is not an unreasonably high price for an hour of professional time from a lawyer in a respected local law firm, which has represented Defendant herein for more than twenty years.

Defendant does not appear to have imposed any limitations on the time defense counsel might spend on this matter. From defense counsel's perspective, there was nothing "undesirable" about his representation of Defendants. On the other hand, the court hesitates to impose an award of the full amount of Defendant's fees upon Plaintiff or his counsel. Plaintiff does not appear to be a man of independent means. Plaintiff's counsel is a busy sole practitioner whose forensic efforts on behalf of aggrieved individuals are valuable to our community. The court will not impose sanctions so harsh or award fees so steep that Mr. Colvin cannot continue to practice law.

 The court therefore awards Defendant's attorneys' fees in the amount of $6,281.19, representing approximately one-sixth of Defendant's attorney's fees and litigation expenses [6] (exclusive of the $1312.50 previously awarded Defendant for expenses incurred in connection with the motion to compel discovery). *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

One-tenth of Defendant's attorneys' fees and litigation expenses incurred from October 2, 1995, the date Plaintiff filed his Complaint, through August 26, 1996, the date Defendant filed its motion for summary judgment, shall be borne by Plaintiff Mark Schutts under 42 U.S.C. § 12205. The court reckons the total of these fees and expenses to be $31,148.96; Mr. Schutts shall bear one-tenth of these fees and expenses, which the court reckons at $3114.90.

One-half of Defendant's attorney's fees and litigation expenses incurred between August 26, 1996, the date the court has found Mr. Colvin first liable under Section 1927, and November 27, 1996, the date on which Defendant filed its motion for attorney's fees and costs, shall be borne by Plaintiff's counsel Mr. Colvin under 28 U.S.C. § 1927. The court reckons these fees and expenses at $6,332.58; Mr. Colvin shall bear one-half of these costs, which the court reckons at $3166.29.

The expenses incurred by Defendant in connection with its motion to compel discovery, which the court previously awarded to

---

**6.** Defendant's attorney's fees for the period between the filing of the complaint and the filing of Defendant's motion for attorney's fees total $34,-424.50. Defendant's other litigation costs (including fees or charges for photocopying, printing, copies of Plaintiff's medical records, review of Plaintiff's medical records by a physician, in-

vestigative services, and computer-assisted legal research) total $3057.14. For the purposes of the instant motion, the court allocates these non-attorney-fee expenses over the course of the litigation *pro rata*. Defendant's total litigation costs for the relevant period therefore amount to $37,-481.64.

Defendant in the amount of $1312.50, shall be borne entirely by Plaintiff's counsel, Mr. Joe Colvin.

■ Defendant Bently Nevada shall thereby be least partially compensated by the award of attorneys' fees and costs under Section 12205 and Section 1927. Sanctions in the form of an award of attorneys' fees and costs under Rule 11 are therefore unnecessary to compensate Defendant for its litigation expenses. On the other hand, the court's own interest in the conservation of its resources and in the competence and probity of the members of its bar remain as yet unvindicated. Rule 11 sanctions are specifically designed to deter baseless filings and frivolous litigation, *Business Guides, Inc. v. Chromatic Communications Enter., Inc.*, 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991), to unclog the choked dockets of the federal courts, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), and to punish improper conduct by lawyers and litigants. *United States ex rel. Leno v. Summit Constr. Co.*, 892 F.2d 788 (9th Cir.1989).

The court has no interest in deterring the filing of meritorious claims, particularly civil rights claims; it is the federal courts' constitutional office to right constitutional wrongs. The court believes it is "[h]ard-fought, energetic and honest representation" which forms "the bedrock of our judicial process." *In re Yagman*, 796 F.2d 1165, 1182 (9th Cir.1986). And the court fully recognizes its obligation to avoid imposing sanctions which might "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Proposed Amendments to Fed.R.Civ.P. 11 Advisory Committee Notes, 97 F.R.D. 198, 199 (1983).

But when lawyers shower the court with frivolous papers, everyone suffers. Defense counsel become cynical and hardened against *all* civil rights plaintiffs. The federal courts—which today face tremendous pressure from Washington and from the public to conserve costs and to deter unfounded litigation—must spend unnecessary time and effort disposing of baseless complaints. Legitimate civil rights plaintiffs pay part of the price for this intransigence, in the form of

judges' and lawyers' decreasing patience with plaintiffs and their attorneys. As a result, the public itself understandably loses respect for our entire system of justice. *See generally* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 182 (1985).

**Conclusion**

The court must devise a form of sanction sufficient to help defray Defendants' litigation expenses and also to deter future conduct similar to Mr. Colvin's and Mr. Schutts' in the course of this action, and thereby protect the public, the courts, the defense bar and the host of meritorious civil rights claimants whose causes languish beneath piles of pointless papers in the chambers of federal judges. In this matter, justice and the judiciary will be served by apportioning responsibility for one-sixth of Defendants' litigation expenses between Plaintiff and his counsel under 42 U.S.C. § 12205 and 28 U.S.C. § 1927, respectively.

For the foregoing reasons, *IT IS THEREFORE HEREBY ORDERED* that Defendants' Motion for Attorney Fees and Sanctions (Doc. # 35) is *HEREBY GRANTED* to the following extent and on the following basis:

*IT IS FURTHER HEREBY ORDERED* that, pursuant to 28 U.S.C. § 1927, Mr. Colvin shall within 60 days of the date of this Order make partial reimbursement to Defendant Bently Nevada Corporation for its attorneys' fees and litigation expenses, in the amount of $3166.29.

*IT IS FURTHER HEREBY ORDERED* that pursuant to 42 U.S.C. § 12205, Mr. Mark Schutts shall within sixty (60) days of the date of this Order make partial reimbursement to Defendant Bently Nevada Corporation for its attorneys' fees and litigation expenses, in the amount of $3114.90.

*IT IS FURTHER HEREBY ORDERED* that, pursuant to Fed.R.Civ.P. 37(a)(4) and the previous Order of the court (Doc. # 19), Plaintiff's counsel Mr. Joe Colvin shall within twenty (20) days of the date of this Order pay Defendant Bently Nevada Corporation the sum of $1312.50 as reimbursement for

litigation expenses incurred in connection with Defendant's motion to compel discovery.

***IT IS FURTHER HEREBY ORDERED*** that Plaintiff's Request for Hearing (Doc. # 40) on Defendant's motion for attorney's fees and sanctions is ***DENIED AS MOOT.***